LAZELL, Marsh and others v. Powell, Wells and James.

## LAZELL, MARSH and others v. POWELL, WELLS and JAMES.

### CHANCERY, FRAUD. *Attachment.*

1. When goods are purchased on credit with the original purpose on the part of the purchaser of defrauding the owners, and by him sold to a third person, who purchases with knowledge of the fraud on the part of the original purchaser, and for the purpose of assisting in it, an attachment in chancery will hold such of the goods as may be found in the hands of the second purchaser.

### SAME. PROCEEDS RECOVERABLE. *Case overruled.*

2. The second fraudulent purchaser will also be compelled to account to the original owners for the value of the goods sold by him to innocent purchasers without notice of the fraud. So much of the *dictum* in Tubb v. Williams, 7 Humph. 371 as decides otherwise, is expressly overruled.

### SAME. *No indemnity to fraudulent purchasers.*

3. On such a case, the sale being absolutely void for fraud, no indemnity will be allowed the fraudulent vendee for payments made in pursuance of the bargain to the creditors of the fraudulent vendor. He must account fully, to the extent of the property fraudulently sold to him.

### SAME. *Dictum, general rule stated.*

4. The correct doctrine in all such cases where there is actual fraud must be that the defrauded creditors are entitled to the full value of their debtor's property, thus fraudulently conveyed, without regard to the loss which may fall upon those who have conspired to defeat them.

### SAME. *Dictum innocent purchasers not liable.*

5. Though the complainants had parted with their goods through the actual fraud of another, they could not, it seems, reach them in the hands of innocent purchasers, as in case of felonious possession.

### SAME. *Character of relief.*

6. The fraudulent vendor having at the same time conveyed to the fraudulent vendee, his interest in certain real estate for an inadequate price, such conveyance will be set aside, and the property so conveyed held subject to the claims of the defrauded creditors, and the notes given for the purchase money cancelled.

7. SAME. A conveyance of land made by the fraudulent vendee to the fraudulent vendor in pretended payment of the goods sold, .as well as the notes given in part payment for the same, will be cancelled.

CARUTHERS, J., delivered the opinion of the Court:

The complainants, in these various attachment bills and petitions, consolidated, are citizens of New York and Philadelphia, and creditors of defendant Powell, for larg e quantities of drugs and medicines sold to him in the summer of 1858.

The charges are, that Powell and Wells formed a fraudulent scheme to impose upon complainants by getting their goods in the name of the former, an inexperienced young man, then just twenty-one, under the pretence of setting up a drug store in Nashville for a legitimate retail business, and then breaking and appropriating the proceeds for which they might be able to sell them, to their own use, and entirely avoid the paying for them. That in pursuance of this scheme, after opening most of the drugs, though not all, and selling a few months, the whole stock, in gross was sold out to defendant James, who is charged with complicity in the fraud, and is the uncle of Powell, for a feigned or greatly inadequate consideration, and the possession delivered to him. This was done about the 1st of September, 1858. Soon after that, those bills were filed, and the drugs, &c., then on hand, attached. The whole amount of the purchases in the eastern cities from complainants and others, was about $16,000.

T here is no doubt, and it is distinctly admitted in the argument, that the intention of Powell from the first was to perpetrate a gross fraud, to the full extent that it is charged. He declines to answer the bill, and disclosed

Marsh and others v. Powell, Wells and James.

the scheme to make a fortune, in the mode adopted, to several friends before he went on to make the purchases. It was deliberate and premeditated on his part. There can be just as little doubt, from the proof, that Wells, who was his cousin, participated in his designs, and was to be interested with him in the spoils. He, by his misrepresentation, obtained credit for Powell, and imposed him upon complainants as worthy of trust and confidence. There can be no question but that the case made out renders him liable to the full extent of Powell; and the decree against them jointly, for the whole amount, of the debts contracted, was clearly correct. Upon this part of the case we have no difficulty.

The extent to which James should be made liable presents more difficulty. The proof is not quite sufficient to implicate him in the original fraud, so as to make him responsible with the other two, for the whole debt. Yet it is manifest that the purchase of the drugs from his nephew Powel, was designed to aid him in his dishonest purpose to defraud his eastern creditors. He pretended to pay him in a large tract of land in Mississippi at $15 per acre, worth not more than five, if so much, and $2,000 towards his local and home debts in his own time. Some of them he has paid, and perhaps, assumed others. James, in his answer, states the consideration to have been $12,265; paid by 676 acres of land in Mississippi at $15 per acre, $10,140; cash down $125; and $2,000 to be applied to his local debts. He says his motive for buying was that he discovered Powell was addicted to drinking and gambling, and that the land would be better for his creditors than the drugs, which were in danger of being lost in his hands on account of his want of skill, and reckless habits. It is presumed

that in this statement he only had reference to his home creditors, as it is proved by his own declarations that he was anxious to defeat the others. He said that it was not his intention to defeat the home creditors, but as to those North, he cared nothing about them, and expressed an entire willingness, and even delight, that their debts should be lost. He referred to some runaway negroes of his that had escaped to that section, and seemed to think that such losses as these were a just retribution upon them for their iniquities on the subject of fugitive slaves. All these, together with the additional facts, that he had no acquaintance with the drug business, was a near relation of Powel, the inadequacy of the consideration, and his knowledge of the object of Powell to defeat and defraud his creditors, must in law invalidate and annul the sale to him for fraud. The attachment will therefore hold the drugs against his claim. (1)

The Chancellor ordered an account upon this branch of the case to ascertain the value of the goods that went into his possession under the pretended purchase, and made him accountable for those taken by the attachment, as well as such as he had before sold or disposed of since his purchase. To this last part of the decree objection is made, and the case of Tubb v. Williams, 7 Humph., is relied upon. It is true there is a remark in that case, on page 371, that:

"The statutes of Elizabeth, and our acts of 1801, enable the creditor to subject the specific property, fraudulently conveyed, while in the hands of the fraudulent decree of

_____

(1) Fraudulent conveyance, or sale or gift absolutely void as against creditors. Code 1759; taken from Act 1715, ch. 38, sec 8, and Act of 1801, ch. 25, sec 2, *first clause.*

A vendor, whose goods have been obtained by fraud, may pursue them into the hands of all who purchase them with knowledge of the fraud. Arendale v. Morgan, 5 Sneed, 703, 712.

vendee, to the satisfaction of his claim, but they do not enable him to claim the proceeds of such property."

The case is not reported, yet it is in the distinct recollecttion of one of the present members of the court, that soon after that decision now relied upon, was fully considered and reversed, or regarded as a dictum. It never could have been the law. If it were so, a fraudulent douse or vendee could always avoid responsibility by an immediate sale of the property; with the proceeds in his pocket. Could it be possible that James, by a sale of the drugs on the next day after his fraudulent purchase, with the notes of his vendor in his possession for $12,000, would be protected against the honest creditors of Powell?

That part of the decree, then, by which James is required to account to complainants for the portion of the goods disposed of by him, or his agents, previous to the issuance of the attachments is clearly correct. In taking the account on this branch of the case, the amount the goods were estimated to be worth by the parties at the time of the sale, will be taken as *prima facie* correct as against James. That is he will be held accountable for the $12,000 worth of goods, except so far as he has delivered them over under the decree, unless he can show that there was a mistake as to their quantity and value, or some other legal cause to be exhonerated.

But in this part of the decree there is an error in favor of defendant James. He is to be allowed a credit for whatever he may have paid for said Powell since his purchase, and before the levy of these attachments. We do not understand this to be the rule in cases where a sale is set aside, as in this case for actual or positive fraud. If that were so it would be entirely unavailing to creditor to set

a side the conveyance, where the full value of property was given, and the sale vacated because of the concurring purposes of the parties to defeat the creditors of the vendor.

Sands v. Codwise, 4 Johns. Rep., 599 was a case where a fraudulent sale was made by Comfort Sands, of a large amount of property, to his son Henry Sands, to defeat his creditors. Upon a bill filed by them to set it aside for fraud the court held it to be void, and in his opinion, Kent, C. J. says, that the question arises "whether the deeds ought not to stand as security to reimburse the sons for their advances, and to indemnify them against their outstanding paper." On that question he says: "The denial of this prayer appears to me to result necessarily from a decision against the validity of the deeds. On the grounds of absolute fraud the deeds were void to all intents and purposes. It is the same thing as if no such deeds had ever been executed. A fraudulent conveyance is no conveyance, as against the interests intended to be defrauded. This is the plain language and intelligent sense of the rule of the common law. It is impossible that those deeds can be permitted to stand as a security if they are to be adjudged void *ab initio*. If they have no lawful existence, it would be inconsistent and absurd to recognize them for any lawful purpose. I presume there is no intance to be met with of any reimbursement or indemnity afforded by a Court of Chancery to a *particips criminis* in a case of positive fraud.     *     *     *     *

*     *     No right can be deduced from an act founded in actual fraud. The case in which a deed is set aside on terms, are not at all analagous to the one before us." He says to give such deeds partial effect would be giving countenance to fraud. Where a deed is set aside

Lazell, Marsh and others v. Powel, Wells and James.

because the bargain was hard or unconscientious, or for constructive fraud, he admits the rule may be different

It is said in argument that in this case the decree of the Vice Chancellor allowing the fraudulent vendee to be discharged to the extent of any payments to the *bona fide* debts of his vendor was affirmed. It will be found upon examination of the final decree, that such is not the case, but that part is omitted and a credit allowed only for permanent improvements and taxes paid out.

In Boyd v. Dunlap, 1 John. ch. 482, the same doctrine is restated thus : " A deed, fraudulent in fact, is absolutely void, and is not permitted to stand as security for any purpose of reimbursement or indemnity ; but it is otherwise with a deed obtained under suspicious or inequitable circumstance, or which is only constructively fraudulent." He cites the case of Sands, and other cases, to sustain the position. We are referred to the cases of Ames v. Blunt, 5, p 22; Grover v. Wakeman, 11 Wendall 186, and our own case of Peacock v. Tompkins, Meigs Rep. 330, in support of the rule, that indemnity will be allowed to the fraudulent vendee for payments actually made to the creditors of the vendor. Those are all cases of assignment for the benefit of creditors, and where the fraud was held to be constructive, and not actual. But independent of that, and though the distinction seems to have been disregarded in some of the cases, we are not prepared to admit that the same rule would apply to absolute sales which are found to be void for fraud. In cases of assignment in trust for the benefit of creditors, we have followed the case of Peacock v. Tompkins, and have also recognized the doctrine of Boyd v. Dunlap, as laying down the proper rules on this subject. (2 *See bottom of next page.*)

In the case before us being a contest between the vendors of the goods, and a purchaser with notice of the fraud in the original purchase, and concurring in carrying it out, we are bound to hold, that as to him the title never passed out of the complainants, and therefore an application of their property, or its proceeds by him to the debts of Powell, could upon no correct principle operate as a discharge. These complainants, upon this view, would stand upon higher ground than the creditors of Powell, being still owners of the property converted by James. It might be very different with a purchaser from James, or Powell, without notice of fraud, if the complainants attempted to pursue the goods in their hands; because in such case, the complainants, having parted with the possession of their property, though by fraud, could not perhaps reach it in the hands of an innocent purchaser, as in a case of felonious possession. (3)

But it is by no means certain that in any case where a sale and purchase is set aside in favor of the creditors, because it was made to hinder and delay or entirely defeat them in the collection of their debts, that any claim for money advanced to, or for the vendor can be reimbursed. If this were so, the remedy would be of no avail to credi-

(2) No idemnity in a case of actual fraud. Alley v. Connell, 3 Head, 578, 582; Brooks v. Canghran, 3 Head, 464' 467. A party guilty of fraud is not entitled to be relieved against the consequences of his fraud. Moody v. Fry, 3 Humph. 567; Sharp v. Caldwell, 7 Humph. 415; Mulloy v. Young, 10 Humph. 298; Parks v. McKarny, 3 Head, 297; Taylor v. Harwell, 5 Humph. 331; Nichols v. Cabe, 3 Head, 92.

(3) No recovery against innocent purchaser without notice of the fraud. Arendale v. Morgan, 5 Sneed, 703, 710, 717; Coleman v. Satterfield, 2 Head, 259, 265; Williams v. Lowe, 4 Humph. 62, 63; Read v. Slaton, 3 Hayw. 159, 163; Story Eq. § 409 *et seq.*

tors when the purchasers had paid the value of the property. It would be only necessary for friends to intervene and pay the embarrassed debtor the full price of the property for the express purpose of enabling him to avoid his debts, with the proceeds in his pockets. The correct doctrine must be in all such cases, where there is actual fraud, that the defrauded creditors are entitled to the full value of their debtor's property thus fraudulently conveyed, without regard to the loss that may fall upon those who have conspired to defeat them. This will also operate as a just punishment for the guilty, and deter men from participating in the perpetration of frauds upon honest creditors. If they are to be fully reimbursed upon detection in their fraud, there would be no restraint upon them. The heavier the loss upon them the better will be the effect as an example, and the more the law will be exalted in the estimation of all good men. It would be but a mockery to allow men to enter into these fraudulent arrangements, and enjoy the chances of success, and when detected, saved from all loss by full reimbursement. This is not the policy of the law, nor is it law at all, in cases of actual fraud. And this being such a case there can be no credit to James for any payments he may have made to Powell or his creditors, but he must account fully, as before stated. (4)

The decree of the Chancellor is also right in setting aside for the benefit of complainants the deeds of conveyance from Powell to James for his interest in remainder in the estate of his father, after the death of his grandmother·

The sale was made for the price of $4,000, on a credit

(4) But where the goods were obtained by a felony, no number of sales will divest the original owner of his property. Arendale v. Morgan, 5 Sneed, 703, 712 ; Parham v. Riley, 4 Cold. 5, 9, 10.

of 2, 3, 4, and 5 years, for which notes were executed. The proof is, that the same was worth from six to eight thousand dollars. So the consideration was greatly inadequate, and the presumtion cannot be resisted, in view of all the circumstances that the object of this conveyance, with both parties was to shield this property also from the creditors, and was most likely intended to be covered by James for the benefit of his failing nephew after the approaching storm had passed over. So this conveyance must be also set aside, and this interest oppropriated to the satisfaction of complainant's debts, so far as it may be necessary. The notes given by James in this purchase, as well as the deed for the Mississippi land in the other, will be cancelled.

With the modification suggested in this opinion, the decree will be affirmed, and the cases remanded for further proceedings. The costs will be paid by defendants.

*Decree affirmed.*