In the Matter of the Estate of FRANK H. THOMPSON, Deceased.
Surrogate's Court, Orange County, October 1, 1936.

*Louis J. Doyle* for Harold W. Mailler, as receiver of the Monroe National Bank of Monroe, New York, petitioner, claimant.

*Philip A. Rorty*, for Martha C. S. Thompson, as administratrix.

TAYLOR, S.   The intestate died on the 13th day of March, 1927, leaving as his only heirs at law and next of kin his widow and two infant children.   The widow was appointed administratrix and letters issued to her on March 29, 1927.   Proceedings were had for the sale of decedent's real property and in connection with the sale the administratrix received a purchase-money mortgage in the sum of $10,000, the balance of the sale price having been paid in cash, which has already been distributed to the widow individually and as guardian of the children.   The transfer tax has been determined and paid.   All claims presented have also been paid, and the only assets in the estate at the time of the bank assessment hereinafter referred to, and now, are shares of stock of the Monroe National Bank and the purchase-money mortgage.   Interest upon the mortgage, as received, was distributed among the widow and the two children according to their respective interests.   The mortgage is in an amount too large to be assigned *in toto* to any one of the interested parties.

On October 4, 1932, which is, of course, more than eighteen months after the decedent's death and after the appointment of the administratrix, a 100 per cent stock assessment was duly levied upon the outstanding shares of stock of the Monroe National Bank, and due notice of that assessment was given to the administratrix.   No claim was formally filed with the administratrix until July 5, 1934.   The stock assessment against the shares held by the decedent is $3,000.

The pertinent statute at the time of the stock assessment (U. S. Code, tit. 12, § 63, since modified by § 64-a) provides that " the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares," and section 64, so far as applicable here, is practically the same.

Referring now to the liability of estate representatives, we find that section 66 provides that " persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject

to any liabilities as stockholders; *but the estates and funds in their hands* shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name." (Italics not in original.)

The administratrix first meets the claim of the receiver with the contention that for all practical purposes this estate has been settled, and that the receiver's only remedy, if it be permitted to him, is to proceed against the heirs at law and next of kin under the Decedent Estate Law, section 170 *et seq.*, and in support of this claim cites *Matter of Schinasi* (139 Misc. 459; affd., 233 App. Div. 738), in which the surrogate states that " it is not necessary, in the administration of every estate, to have a formal accounting " (p. 468). Reference might also be made to *Matter of Wagner* (119 N. Y. 28), wherein the court said: " But where, as in the case before us, the executor shows a settlement of the estate and its distribution by and between the persons entitled to share in it, I think he has shown himself to be without further duty to perform " (p. 33).

In *Forrest* v. *Jack* (294 U. S. 158) it was held that the estate was not liable for a bank stock assessment, but it affirmatively appeared there had been a court order reciting that the estate had been closed and distribution had been made as ordered.

It is undoubtedly true that the law encourages the settlement of estates, whether by judicial proceedings or otherwise, but can it be said that this estate has been settled in either manner? Concededly, there has been no judicial accounting, and while there has been substantial distribution, nevertheless the estate still holds the stock in question and a purchase-money mortgage of $10,000.

In *Mahoney* v. *Bernhard* (45 App. Div. 499; affd., 169 N. Y. 589) there had been a formal judicial settlement, but the shares of stock of an insolvent banking corporation had not been transferred, probably because they possessed no market value, and with respect to the contention raised here, the court said: " His final discharge is not in terms provided for. Nor was it here decreed. It is true that when executors, under a surrogate's decree upon their accounting, turn over to themselves, as trustees, the balance of the estate found to be in their hands, it is tantamount to a discharge with respect to the property so turned over. But the executorial func-tions are not absolutely terminated thereby; and we cannot at all agree to the appellant's proposition that thus ' the executors became non-existent.' They were in legal intendment discharged *pro tanto*. ' Other assets,' however, as Mr. Redfield, in his work on the Law and Practice of Surrogates' Courts ([4th ed.] 788), correctly

says, ' may be realized and new liabilities incurred; ' and as to those the executorial duty continues. It follows that as the shares remained throughout in the names of the decedents upon the books of the bank, their estates, and, consequently, their executors, are liable under the statute, as well as the latter's unregistered transferees."

A somewhat similar situation was present in *Matter of Bingham* (127 N. Y. 296), in which the Court of Appeals said: " This claim [stock assessment] is based upon the fact that he was the sole heir and next of kin of his son Samuel, and after his death took it into his possession, voted it with his other stock, and received such dividends as it produced. But his control of it as well as the receipt of dividends was consistent with the fact that he was administrator of the estate of his son. While he duly advertised for claims existing against his intestate, and may have paid such as were presented and undisputed, he never made any judicial settlement of his accounts as administrator, nor was the stock of his son transferred to him on the books of the bank. The residuary interest in the stock after payment of the debts of his intestate belonged to him, but while he held the relation of administrator, which he could terminate only through a final judicial settlement of his accounts, it is not seen how he could be treated as having the legal title to the stock other than in his representative capacity. An administrator may, however, after the expiration of the time prescribed by statute for the presentation of claims by creditors, make distribution of the assets to the next of kin, and not be chargeable to those whose claims were not presented * * *. This is not applicable to retention by the administrator, who is also the next of kin, and has not been discharged by and upon judicial settlement of his accounts from that relation. But if in this instance he had procured a transfer upon the bank books of the stock to himself individually a different question may have been presented. There was no error in not treating the assessment upon the fifty shares as the debt of James Faulkner, deceased."

In *Tourtelot* v. *Finke* (87 Fed. 840) it appeared that the death of the decedent occurred two years before the bank failure; that the executor was the sole distributee and all debts had been paid, but the estate had not been formally settled. In this situation it was held there was liability on the part of the estate.

Applicable here is this language from *Baker* v. *Beach* (85 Fed. 836): " But, having failed to make such transfer, she cannot be said to have completely settled up the estate, so as to claim exemption from liability in her capacity as executrix to the extent of the value of any assets of the estate remaining subject to her control."

There can be no doubt that an unsettled estate is liable for a bank stock assessment even though the closing of the bank and consequent assessment take place after the stockholder's death. (*Wickham* v. *Hull*, 60 Fed. 326; *Parker* v. *Robinson*, 71 id. 256; *Miller* v. *Hamner*, 269 id. 891; *Luce* v. *Thompson*, 36 F. [2d] 183.)

The foregoing conclusions necessarily follow from the holdings that upon a stockholder's death his estate succeeds to the stock; that the pertinent statute, providing for liability, is read into and becomes part of the contract; that the liability is contractual and not penal and that it survives the stockholder's death. (*Austin* v. *Strong*, 117 Tex. 263; 3 S. W. [2d] 425; *Skinner* v. *Sullivan*, 112 Misc. 365; *Matter of Cohen*, 149 id. 765; *Richards* v. *Gill*, 138 App. Div. 75; *Leighton* v. *Leighton Lea Association*, 146 id. 255; *Maxwell* v. *Thompson*, 195 id. 616; affd., 232 N. Y. 619; *Bailey* v. *Hollister*, 26 id. 112; *Wiles* v. *Suydam*, 64 id. 173; *Cochran* v. *Wiechers*, 119 id. 399; *Rankin* v. *Miller*, 207 Fed. 602; *Flash* v. *Conn*, 109 U. S. 371; *Richmond* v. *Irons*, 121 id. 27; *Converse* v. *Hamilton*, 224 id. 243; *Forrest* v. *Jack*, 294 id. 158; *Seabury* v. *Green*, 294 id. 165.)

It is not necessary to determine in this case whether this estate would still be liable if the representative had transferred the stock in question to the minor distributees. (*Early* v. *Richardson*, 280 U. S. 496; *Seabury* v. *Green*, 294 id. 165.)

It is concluded that even though this claim did not arise and was not presented until long after the time the estate might have been judicially settled, the claimant, nevertheless, has the status of a creditor and may receive distribution in respect to his claim from the undistributed assets. (*Matter of Cohen*, 149 Misc. 765, 774.)

So far as informed by the agreed statement of facts, it appears that the distribution of liquid assets has been according to the respective interests of the heirs at law and next of kin, so that the payment of this claim from the assets in hand will result in each heir at law and next of kin being subjected to his ratable portion thereof, but if this is not the fact, then upon the settlement of the order or decree consequent upon this decision only so much of the receiver's claim will be directed to be paid from the assets in the hands of the administratrix as such as will ultimately result in the distribution of the total estate assets (those already distributed and those not yet distributed) to the parties entitled according to their statutory proportions.

Settle order or decree on five days' notice.