## SOLINSKY *v.* LINCOLN SAVINGS BANK.

### (*Nashville.* February 1st, 1887.)

1. FRAUDULENT CONVEYANCE. *Personal liability of grantee to the grantor's creditors.*

   A fraudulent grantee is liable, in equity, to personal judgment, at the suit of the grantor's creditors, for the proceeds or value of the property fraudulently conveyed to him, where the property itself has been so disposed of, or is so concealed by him, that it cannot be reached or identified.

   Cases cited: Tubs *v.* Williams, 7 Hum., 367, limited to actions at law by Richards *v.* Ewing, 11 Hum., 332, and overruled by Marsh *v.* Powell, Thompson's Cases, 195.

   (See Williamson *v.* Williams, 11 Lea, 370; Coleman *v.* Satterfield, 2 Head, 260, 265; Chalfant *v.* Grant, 3 Lea, 118.)

2. ATTACHMENT. *Pending preparation of a general assignment. Priority.*

   Until a general assignment is perfected by registration, the property of the assignor remains subject to attachment by his creditors on account of previous fraudulent dispositions thereof, without regard to the purpose of the assignment, and notwithstanding the creditors, at time of suing out their attachments, have notice of the incomplete assignment. In such case the attaching creditors acquire the right to priority of satisfaction.

3. SAME. *Levy of. Effected by breaking door or window of store-house valid.*

   A levy of an attachment upon the goods of a debtor is valid and effectual, although the officer effected it, in the night-time, by opening a window or forcing an outer door of a store-house, in which the goods were stored.

   Cases cited and approved: 1 Smith's L. Ca., 188; 16 Johns., 288.

4. SAME. *Fraudulent assignment. Subsequent attachment. Acceptance.*

   Where a general assignment is fraudulent *in fact* and the assignee participates in the fraud, and after the registration of such assignment some of the assignor's creditors attach the property therein conveyed —in a contest between such assignee and the attaching creditors the assignment will not be upheld where no *bona fide* creditor therein secured *actively* intervenes. The actual acceptance by such assignee, or the presumed acceptance by the creditors secured, is not sufficient to uphold such assignment against the attaching creditors.

5. SAME. *Abandonment of. Injunction. Additional attachment.*

Creditors whose attachments at law have been enjoined by the bill of their debtor and his fraudulent assignee, do not abandon their former attachments by suing out, in equity, attachments against other property of their debtor, to secure the same debts.

6. ASSIGNMENT. *Assignee not allowed attorney's fees, when.*

An assignee will not be allowed his attorneys' fees out of the trust funds, where such fees were incurred in a litigation brought about by his own and the assignor's fraud, and which resulted in the loss of the entire trust fund to the beneficiaries.

---

## FROM LINCOLN.

---

Appeal from the Chancery Court of Lincoln County. August Special Term, 1886. E. D. HANCOCK, Ch.

LAMB & TILLMAN, J. G. CARRIGAN, and N. SMITHSON, for Solinsky.

N. D. MALONE, F. P. TAYLOR, and A. M. SOLOMON, for Rosenheim Bros. ·

J. H. HOLMAN for Bank.

LURTON, J. L. Lipman, a merchant owing debts amounting to about $15,000, made a deed of assignment of his stock of goods and his book accounts to H. Solinsky, as trustee. He secured in this deed all of his creditors equally. Certain of his creditors sued out and levied attachments upon this stock of merchandise, a few hours in

advance of the acknowledgment and registration of the deed of trust. A number of others sued out and levied attachments a few hours after the registration of the deed to Solinsky, and after his qualification as trustee. The pleadings make a controversy between Solinsky, as trustee under the deed of assignment, and the attaching creditors. The original bill was filed by Solinsky, as trustee, and Lipman, the assigning debtor, against the attaching creditors, and this bill enjoined the prosecution of the attachment suits, and this bill, together with the answer and cross-bill and an original bill filed by the attaching creditors, present issues upon which the validity of the deed of assignment depends, and upon which the validity and effect of the several attachments depend.

It will be unnecessary to further state the pleadings; the facts necessary to the determination of the several questions presented by them will appear in the subsequent parts of this opinion. The facts proven abundantly establish the charge that Lipman was, and had been for some time, fraudulently disposing of his property with the intent to hinder and defeat his creditors.

The deed of assignment secures, among the other claims secured therein, a debt of $1,200, stated to be due to Solinsky, the trustee. The cross-bill and original attack this debt as colorable. The proof overwhelmingly establishes this charge. Its fictitious character is made manifest. The attaching creditors, in their cross-bill, charge that So-

linsky had aided and abetted Lipman in the fraudulent sales, transfers, and concealments made just prior to the general assignment. That Lipman had fraudulently transferred to Solinsky himself a considerable amount of property, and a decree is sought against him for such property or its value. The proof shows much complicity upon the part of Solinsky in the fraudulent transactions of Lipman; and it is positively shown that about fourteen cases of boots and shoes, purchased by Lipman at Nashville, were never taken by the latter from the depot at Fayetteville, but were by the clerks of Lipman re-marked and re-shipped to one O. Shinky, at Wales Station, Tenn. This latter individual, instead of claiming or receiving the goods, simply re-marked them at the depot at Wales Station to Solinsky, at Pulaski, where the latter had a store. These goods are shown to have been received by Solinsky, and their value is shown to be about $400. It is true that Solinsky claims that these goods were sent to him as a part payment upon a pretended indebtedness due to him by Lipman. The effort to prove such an indebtedness has wholly failed, unless it be as to $250 security debt claimed to have been paid by Solinsky for Lipman. But the proof as to this is not satisfactory. But these goods were claimed to have been paid and credited, not upon this security debt, but upon a note for $700. No note is produced, on the contrary, when Solinsky is called on to produce such note, he claims after the as-

signment to have assigned it to one Bajotsky. The latter has not filed it as a claim, and he does not testify in the cause. We are satisfied there was no debt due, either at the time of this mysterious shipment of shoes or at the time of the making of the deed. These goods have not been attached, and they perhaps could not be identified. It is insisted that no decree can be granted for the produce of the sale of the merchandise, or for the value. The statement in the case of *Tubbs* v. *Williams*, 7 Hum., 367, to the effect that under the statute of frauds the creditor of the fraudulent vendor or donor could only reach the specific property sold or conveyed, and could not recover its value or proceeds from the fraudulent vendee or donee, is not the law, and never has been the law. It was *dictum* in the case in which it was used. In the subsequent case of *Marsh* v. *Powell*, Thompson's Tennessee Cases, this language was expressly commented on and distinctly overruled. Prior to the last case referred to this language had been limited to actions at law. *Richards* v. *Ewing*, 11 Hum., 332.

When a fraudulent vendee has so concealed or disposed of the property that creditors cannot reach or identify it, the creditor may, in equity at least, recover the proceeds or value thereof. The Chancellor gave a decree for the value of these goods directly traced to Solinsky, and we affirm his action.

The attachments levied before the registration of the deed of assignment were properly sued out

and lawfully levied, and are entitled to priority of payment in the order of their levy. That the creditors suing out these attachments had reason to believe at the time that a general assignment was being prepared will not operate to prevent their levying. They had lawful grounds for attachment in the previous fraudulent conduct of Lipman, regardless as to whether the general assignment he was supposed to be making was or was not a further fraudulent scheme. So long as no valid conveyance by Lipman was of record, his creditors had a right to pursue their legal remedies. The objection that their levies were made in the night-time, and that entrance into the store-house where the merchandise was stored was obtained by raising a window or forcing an outer door, is not tenable. The maxim that "a man's house is his castle" only extends to his dwelling-house; therefore a store-house or ware-room or barn or out-house, not connected with the dwelling-house, may be broken open in order to levy an execution or attachment. Swayne's Case, Smith's Leading Cases, Vol. I., side-page 188.

Spencer, Chief Justice, in delivering the opinion of the Court in the case of *Haggerty* v. *Wilbur*, 16 Johns., 288, said:

"There can be no doubt that the Sheriff had authority to break open the store and seize the goods. The privilege which the law allows to a man's habitation, and which precludes the Sheriff from entering unless the outer door be open, either

to arrest the party or to take his goods on execution, does not extend to a store or barn disconnected with the dwelling-house and forming no part of the curtilage."

The Chancellor was in error in holding these levies invalid because of the breaking into the store-house.

We think the attachments levied on the day following the registration of this deed of assignment are entitled to satisfaction in the order of their levy, after first paying those levied before the assignment. Although this deed of assignment purports to secure all of the creditors of the assignor equally, yet we think it was fraudulent in fact in view of all the facts of this case. The trustee to whom this deed was made had been guilty of aiding the assignor in his previous fraudulent disposition of his assets. A considerable lot of the goods of the assignor have been positively traced to his possession. There are circumstances in the record strongly indicative of his having fraudulently obtained other goods. A fictitious debt of $1,200 is secured to him in the assignment. He was the brother-in-law of the debtor. The deed of assignment contains no inventory of the goods conveyed and no list of the notes and accounts. No detailed schedule is annexed. There is nothing to indicate the quantity or the value of the property assigned. The bond of a trustee of this character would be very slight protection to honest creditors secured by such an

indefinite assignment. We are convinced that the purpose of this assignment was fraudulent; for these goods in the hands of Solinsky were, in effect, in the hands of Lipman. Therefore, without regard to the effect which the Act of 1881 might have upon such a deed of assignment, we think it was in fact fraudulent and void. That there are *bona fide* debts secured therein which have not participated in the fraud of the assignor or the purposed fraud of the assignee may be true. But no such creditor has intervened. This has from the beginning been a litigation between Solinsky, claiming as trustee and creditor, against the attaching creditors. There is no evidence whatever that any creditor has accepted the benefits of this deed. The presumption of acceptance is not strong enough to justify us in upholding this instrument as valid for any purpose when there is no one actively seeking relief under the deed but the fraudulent trustee. The acceptance by such a trustee under the facts of this case cannot be treated as an acceptance by the secured creditors, none of them actively seeking relief in this case.

There is nothing in the point made in brief of counsel that the attaching creditors have abandoned their attachments sued out at law. They were enjoined under the bill of Solinsky and Lipman from prosecuting their attachment suits. The very purpose of the bill of Solinsky was to determine the validity of the deed of assignment as

against the attachments. The attachments sued out in this court were to reach assets not subjected by the attachments at law. The validity of these attachments at law is assailed by the original bill upon the ground already discussed and upon a denial of fraud. Without passing upon the question as to whether the grounds set out in the affidavits for the legal attachments can be controverted by such a bill as this, we are content to determine that fraud has been abundantly proven and the ground for attachment vindicated.

The costs of both the original bills and of the cross-bill will be paid by Solinsky and L. Lipman, and of this appeal will be paid by H. Solinsky and his sureties. The case will be remanded for the execution of this decree. The claim of Solinsky to be allowed his disbursement for counsel fees incurred in this litigation will of course be disallowed. The burden of paying for this litigation cannot be thrown upon the fund to which the attaching creditors are entitled. Some of the attaching creditors did not appeal from the decree of the Chancellor maintaining the assignment as against all of the attaching creditors. The decree to be drawn will of course be limited to the parties now before the Court.