DILLARD & COFFIN CO. v. SMITH.

(*Jackson.*   June  26,  1900.)

1. FRAUDULENT CONVEYANCE.  *Example of.*

A conveyance is fraudulent in fact and void upon attack of the grantor's creditors, where one, indebted to insolvency and sorely pressed by his creditors, transfers, without making any provision for his creditors, his entire property, consisting chiefly of a stock of goods, to a brother, who was not a merchant or financially responsible, taking his note, without security, for the larger portion of the purchase price, and permitting the brother to retain the remainder upon an unfounded claim, it appearing that both parties co-operated at the time and afterwards in a scheme to defeat the grantor's creditors.  (*Post, pp. 373–380.*)

Cases cited: Robinson *v.* Frankle, 85 Tenn., 484; 6 Wall., 299.

2. SAME.  *The creditor's lien and its enforcement.*

From the date of filing his bill to set aside his debtor's fraudulent conveyance, the creditor acquires a lien upon the property involved, enforceable against the whole world, although the bill may not have been sworn to, and did not seek attachment or injunction or otherwise actually impound the property; and, in such case, the creditor may, by supplemental proceedings, follow the property into the hands of purchasers *pendente lite*, who, of necessity, take same with *lis pendens* notice of the creditor's rights, and may recover same or its proceeds from such purchasers, or obtain judgment for its conversion, being entitled, of course, to only one satisfaction in case of judgments against successive purchasers of same property.  (*Post, pp. 380, 381.*)

Code construed: § 6097 (S.); § 5031 (M. & V.), § 4288 (T. & S.).

Cases cited: August *v.* Seeskind, 6 Cold., 166; Brooks *v.* Gibson, 7 Lea, 271; Mette *v.* Dow, 9 Lea, 102; Epperson *v.* Robertson, 91 Tenn., 412; Solinsky *v.* Bank, 85 Tenn., 368; Gage *v.* Epperson, 2 Head, 669; Arrendale *v.* Morgan, 5 Sneed, 703; Chesney *v.* Rodgers, 1 Heis., 242; Bank *v.* Haller, 101 Tenn., 85; Knott *v.* Cunningham, 2 Sneed, 205; Brown *v.* Kinchloe, 3 Cold., 198; Turner *v.* Brock, 6 Heis., 50.

Dillard & Coffin Co. *v.* Smith.

3. SAME. *Set aside under bill objectionable as setting up antagonistic claims, when.*

Although a bill to set aside a fraudulent conveyance may be objectionable as seeking, in the alternative, to recover in affirmance of that conveyance, thereby uniting antagonistic grounds for relief, still complainant will not be repelled on this account, where this question was not made specifically by demurrer, and the alternative feature of the bill was abandoned in the preparation and prosecution of the case, and relief sought alone on the first ground stated in the bill. (*Post, pp. 381–384.*)

Cases cited: Cunningham *v.* Campbell, 2 Tenn. Ch., 713; Bank ,*v.* Pettit, 9 Heis., 447; James *v.* Kennedy, 10 Heis., 612.

---

### FROM HARDEMAN.

---

Appeal from Chancery Court of Hardeman County. A. G. HAWKINS, Ch.

COOPER & WADDELL for Dillard & Coffin Co.

A. J. COATES for Smith.

WILKES, J. The firm of Smith Bros. was composed of T. M. Smith and J. L. Smith, and was engaged in the mercantile business at Cedar Chapel, in Hardeman County. On the first of January, 1898, the firm sold its stock of merchandise, together with a house and lot, a mule, horse, two-horse wagon, and cow, to Samuel Smith, a brother, the recited consideration being the satisfaction of a debt due to the brother from the firm of $580, and a note

for about $1,570, payable to the firm April 1, 1898, the entire consideration being $2,158. It appears that all the property belonged to the firm, and was used as partnership property, except the cow, and constituted virtually all the property, the firm or its members owned, and that they were in debt and insolvent, their matured debts being something over $3,000.

The Dillard & Coffin Co. were creditors of the firm, by open account, for money advanced and paid out for them in the sum of $1,809.30.

They pressed the firm for payments on their debt, and the firm promised them to ship them cotton and reduce the debt, and so wrote them on the 29th of December, 1897, before the conveyance on the first of January, 1898, promising also in the letter to call upon them by the third or fourth of January and confer in regard to the debt.

On the 28th of January, 1898, the Dillard & Coffin Co. filed their bill, attacking the conveyance to Samuel Smith as fraudulent, and asking that the goods be subjected to the payment of their debt. The bill was not sworn to, and did not ask for any extraordinary process, nor apply for a receiver. The prayer of the bill is that the conveyance be held fraudulent and all the property applied to complainant's debt, but that if the debt to Samuel Smith be held to be valid, and that he did not participate in the fraud, that he be

required to pay the note into Court, and that the same be applied to complainant's debt. The bill did not allege that Samuel Smith had disposed of the goods, or any part of them, and did not ask a judgment for any amount on that account, but proceeded upon the idea that the goods were still in his hands and subject to complainant's debt, and that Samuel Smith was attempting to sell or dispose of them.

On April 1, 1898, on leave granted, complainant filed an amended and supplemental · bill making W. O. Newsom, Robert Newsom, and J. S. Newsom also defendants thereto; and charging, in addition to the allegations of the original bill, that since it was filed Samuel Smith had sold part of · the goods in ordinary course of trade, and the remainder to the Newsoms, and that the Newsoms had actual. and constructive notice of the existence of complainant's lien, and had purchased *pendente lite,* and with · general notice of the suit and lien, and had since sold the goods, but the amounts and values received could not be stated. This amended and supplemental bill prayed for judgment against Samuel Smith and the Newsoms for the value of the goods received by them, respectively, · and for general relief. The amended and supplemental bill does not charge fraud in the sale from Samuel Smith to the Newsoms, was not sworn to, did not ask any extraordinary process, or for a receiver, but was based upon

the idea that complainant had a right to follow the goods into the hands of the Newsoms and subject them, and also to have personal judgment for such as were sold by either Smith or the Newsoms, respectively.

Smith and Smith Bros. answered the original bill, admitting the sale, but denying all fraud, and claiming that the same was *bona fide* and for full value; that the firm was owing Samuel Smith $589.09, and he was demanding payment of same, and being unable to meet the demand, the sale was made for the purpose of paying this debt and the other consideration named.

They also answered the amended and supplemental bill and admitted that Samuel Smith sold a part of the goods in usual course- of trade while he had them, and also had others and sold the remainder to Newsom & Co. The Newsoms demurred, but their demurrer was overruled with leave to rely upon the same grounds in the answer. They also answered that upon information they believed the sale from Smith Bros. to Samuel Smith was *bona fide* and free from fraud; that they purchased the goods and sold part in usual course of trade, and the remainder to Newson & Son, and the latter sold the stock in usual course, adding new goods until but little remained of the original stock. They further stated that they had no notice, actual or constructive, of any lien on the goods in complain-

ant's favor, and, in addition, that they consulted complainant and was by him assured that he had no lien on the goods, and were advised to buy if they desired to do so, that they did buy and paid a full price, and they deny any right to any lien or personal judgment in complainant's favor.

Proof was taken and on final hearing the Chancellor gave judgment in complainant's favor for $1,705.78 against Smith Bros., being the amount of the debt claimed, and held that the sale made by Smith Bros. to Samuel Smith was fraudulent and void as against complainant except to the extent of the debt due to Samuel Smith of $589.08; that by the filing of the bill complainant acquired a lien on the goods in the hands of Samuel Smith and a right to an accounting for all of the same and a right to a personal judgment for all proceeds of goods sold beyond the amount of his debt, and the amount was fixed, after giving the credit for the debt at $1,098.30, and for this judgment was rendered against them.

The Court further held that the Newsoms & Co. had notice of the claim of complainants and their lien and were liable to the extent of the value of the goods received by them and afterwards sold, which was fixed at $133.38, and for this amount judgment was rendered against the firm of Newsom & Co. and its members, but it was

further provided that a payment of either judgment should, as to complainant, be a satisfaction *pro tanto* of the others. The Newsoms and Samuel Smith appealed and assigned errors.

The first assignment is that the evidence in the case does not make out a case of actual fraud as to the purchaser, Samuel Smith. Whether the Chancellor so found does not appear from any express statement in his decree, and his view is only indicated by the recital that the sale was fraudulent and void except to the extent that Smith Bros. were indebted to Samuel Smith. The facts as shown by the record are that the Smith Bros. were indebted to insolvency and they were being pressed for payment. Samuel Smith, the brother, was a man not engaged in the mercantile business, and it is unreasonable that he should have bought this stock of goods from his brothers and involved himself therefor unless he believed them indebted to insolvency and either desired to aid them or protect his own debt. That the firm of Smith Bros. made the conyevance to protect themselves from their creditors can, under the record, admit of no doubt, and the subsequent dealing between the Smith Bros. and Samuel Smith leaves but little doubt that he was aiding them in this purpose, and after getting the amount claimed by himself, he turned the balance over to his brothers with the purpose that they should get the benefit of the same. It does

Dillard & Coffin Co. *v.* Smith.

not appear that Samuel Smith was a man of any property, and the origin and consideration of the debt to himself is not satisfactory to this Court, but upon this feature of the case there is no appeal. No security was demanded of Samuel Smith for the deferred payment, and it does not appear that he had any means outside of the goods themselves to pay the notes.

It was said in *Robinson* v. *Frankle,* 85 Tenn. Rep., 484, that "a sale by a failing debtor of all his available assets to a near relation, upon consideration of the payment of a large and suspicious debt to himself, and the execution of his unsecured notes, payable in six, twelve, eighteen, and twenty-four months, for a sum over and above his own debt and equal to all the other debts of the vendor in amount the purchaser being a man of no financial responsibility and having no reasonable means of paying such notes except from the assets so purchased, is fraudulent and void." In view of the insolvency of the Smith Bros., the pressure upon them for payment of debts owing by them, the sale to the brother, their efforts to sell the property afterwards at a reduced price, their refusal to apply the proceeds to their debt, their refusal to sell or pledge the note, the subsequent sale to Newsom & Co. pending the suit, for less than the stock cost, and the turning over the proceeds to the brothers, we think there is left no ground for doubt but that it was a

scheme participated in by all the brothers to
realize cash upon the goods for the benefit of the
firm, after satisfying Samuel Smith's claim, which
we do not consider made out, and stamps the
transaction as one fraudulent in fact and law.
*Clements* v. *Moore,* 6 Wall. (U. S.), 299. With-
out commenting seriatim upon the several assign-
ments of error, we proceed to consider what we
deem to be the determinative questions involved
in the case.

Under the statute, Shannon, § 6097, it is said:
"Any creditor, without first having obtained a
judgment at law, may file his bill in chancery for
himself, or for himself and other creditors, to set
aside fraudulent conveyances of property or other
devices resorted to for the purpose of hindering
and delaying creditors, and subject the property
by sale or otherwise to the satisfaction of the
debt." Subsequent sections provide that attachment
and injunction may issue and that no previous
judgment at law is necessary to support the bill.
Construing these sections, it has been held that
the Court may subject the property proceeded
against whether it has been seized or not, and
that the omission to seize and impound the prop-
erty pending the suit does not discharge or re-
lease the property from the lien. By force of
the rule of *lis pendens* operating as constructive
notice to all persons of the pendency and pur-
pose of the suit, the lien follows into whoseso-

ever hands it may go and holds it wherever found subject to the satisfaction of the decree rendered in favor of the creditor complainant. *August & Bing* v. *Seeskind et al.,* 6 Cold., 166. And such lien is superior to any subsequent attachment levied on the same property (*Brooks* v. *Gibson,* 7 Lea, 271), or to an assignment in bankruptcy (*Mette* v. *Dow,* 9 Lea, 102). And the lien can only be defeated by failure of complainant to establish his debt or the fact of fraud. *Epperson* v. *Robertson,* 7 Pick., 412.

It is plain from this record that Newsom & Co. had not only constructive but also actual notice of this lien and of the fraud between the original parties, and that they must be considered therefore as having converted the goods and rendered themselves liable for the value of the same. *Solinsky.* v. *The Bank,* 85 Tenn., 368; *Gage* v. *Epperson,* 2 Head, 669; *Arnendale* v. *Morgan,* 5 Sneed, 703; *Chesney* v. *Rodgers,* 1 Heis., 242; *Bank* v. *Haller,* 17 Pick., 85. And this liability exists at the same time and concurrently with that of Samuel Smith, though there can be but one satisfaction. *Knott* v. *Cunningham,* 2 Sneed, 205; *Brown* v. *Kinchloe,* 3 Cold., 198; *Turner* v. *Brock,* 6 Heis., 50.

The principle involved is that the goods having been fraudulently transferred, remain the property of the fraudulent grantor, and they may be followed by the creditor of the grantor until his liability is extinguished. Of course the parties re-

ceiving or handling the goods can be held liable only to the extent of such goods in kind as they may have on hand and the value of such as they may have sold, and are not liable for goods sold by parties other than themselves with which they had nothing to do.

Upon this feature of the case a very ingenious and forceful argument is made that if the creditor elects to pursue one remedy it is an abandonment of the other; and limited strictly to the proposition as thus put, the principle is correct. But in this case the creditor seeks to avoid the sale as fraudulent, and to subject the goods as those of the debtor and at the same time to hold the fraudulent grantee liable for such as he has or may have converted since suit was brought.

It is true that in the prayer of his bill the complainant asks that if the sale to Samuel Smith be not found fraudulent, then that he be required to pay into Court the amount of purchase money. This could, of course, be done only upon the ground that the sale was valid and that the title to the goods passed to him, and to this extent the objects of the bill are inconsistent; but there seems to have been no sufficient demurrer on that account nor any motion to require complainant to elect upon which theory they would proceed, and he has proceeded upon the theory of a fraudulent sale and a consequent conversion of the property pending the suit and while the lien was upon

the property. There is a general demurrer for multifariousness, but it does not specify in what particulars and is not sufficient and appears not to have been pressed.

We think, therefore, that the present case must be differentiated from cases cited by counsel which hold, in substance, that in cases of fraudulent transfers the creditor cannot pursue the goods of the debtor in the hands of the grantee and at the same time ratify the sale and collect the purchase money agreed to be given by the grantee for the goods upon the theory of a valid sale. Such is the holding of a number of cases, among which may be cited *Cunningham* v. *Campbell,* 2 Tenn. Chy., 713; *James* v. *Kennedy,* 10 Heis., 612-614; *Bank* v. *Petit,* 9 Heis., 447, 452.

But in this case complainant does not pursue or press his claim to collect the purchase money agreed to be given by Samuel Smith for the goods, but evidently abandons that as a theory not supported by the facts, and proceeds against the goods themselves, on the ground that they are still the property of the debtor because the fraudulent sale did not change title; and his right to recover personal judgment against Samuel Smith and his assignees is not rested upon any contract, but on the fact that pending the suit Smith and his assignees converted the goods, upon which the law had already fixed a lien from the filing of the bill.

Dillard & Coffin Co. *v.* Smith.

The decree of the Court below was not rested upon the theory that there was a valid sale to Samuel Smith, but that such sale was fraudulent and without consideration except as to the amount of Samuel Smith's debt, and the goods still remained the property of Smith Bros. and liable to their debts, and upon it complainant had fastened a lien which was defeated by the conversion of the goods with full notice of the lien by Samuel Smith and his assignees.

If the contention be true that goods impounded in a chancery proceeding by the filing of a bill can be sold and thus the lien given by law ignored and the property taken, as it were, from the custody of the Court without remedy against the party who thus takes them with full notice of the lien, then the statute to which we have referred is rendered entirely nugatory.

The goods are put in the custody of the Court by the filing of the bill, not perhaps as completely as if attached and put into the hands of a receiver, but sufficiently so as to enable the Court to protect its lien and hold those responsible who take the goods with notice of such lien.

We see no reversible error in the record, and the decree of the Court below is affirmed with costs.