THOMAS E. DALY *et al. v.* SUMPTER DRUG COMPANY *et al.*

(*Nashville.* December Term, 1912.)

1. **FRAUDULENT CONVEYANCES. Merchant's sale of a half interest in a stock of goods is within the bulk sales law declaring such sales, without notice, to be fraudulent.**

The sale of a half interest in a stock of goods by a merchant for the purpose of taking the purchaser into partnership with himself is within the purpose and reason of the statute (Acts 1901, ch. 133) declaring that "a sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent and void as against the creditors of the seller,". unless the prescribed inventory is made and the prescribed notice is given. (*Post, pp.* 415, 416, 420-422, but especially 421, 422.)

Acts cited and construed: Acts 1901, ch. 133.

2. **SAME. Same. Merchant's creditors can sue purchaser of his stock of goods for their value, if required notice was not given.**

Where the purchaser of a stock of goods from a merchant, or of a half interest therein, failed to give the creditors of the merchant the required notice, and the stock in question had practically all been sold, or had been so intermingled with other property of the same kind as to be indistinguishable at the time of the filing of the bill, the seller's creditors may sue the purchaser for the value of the goods, without pursuing the property by attachment. (*Post, pp.* 419, 420, 422, 423, 424, 425.)

Acts cited and construed: Acts 1901, ch. 133.

---

*On the question of the remedy of creditors where sale is made in violation of bulk sales law, see note in 39 L. R. A. (N. S.), 374.

As to what kind or classes of property are within the operation of 'bulk sale statutes, see note in 25 L. R. A. (N. S.), 758.

Daly v. Drug Co.

Cases cited and approved:  Lazell v. Powell, 1 Shannon's Cases, 132; Williamson v. Williams, 11 Lea, 355, 370; Solinsky v. Bank, 85 Tenn., 368, 372; Bank v. Haller, 101 Tenn., 83; Dillard v. Smith, 105 Tenn., 372.

Cases cited and overruled:  Simpson v. Simpson, 7 Humph., 275; Tubb v. Williams, 7 Humph., 367.

3. SAME. Sale and purchase of merchant's stock of goods, without giving the required notice, is fraudulent, regardless of knowledge or intent.

The sale and purchase of a merchant's stock of goods, or a half interest therein, without giving to his creditors the notice required by the statute (Acts 1901, ch. 133), is in violation of said statute, and is fraudulent and void as against the creditors of the seller, whether the purchaser knew there were any such creditors or not, and regardless of good faith. (*Post*, *pp.* 423, 424, 425.)

Acts cited and construed:  Acts 1901, ch. 133.

Cases cited and approved:  Bank v. Haller, 101 Tenn., 83; Dillard v. Smith, 105 Tenn., 372:

Case cited and distinguished:  Lazell v. Powell, 1 Shannon's Cases, 132.

4. SAME. Statute declaring sales of merchandise in bulk, without inventory and notice, to be fraudulent, is a remedial one; no distinction between fraud in fact and fraud in law.

The statute (Acts 1901, ch. 133), declaring the sales of merchandise in bulk, without making the prescribed inventory and giving the required notice, to be fraudent and void as against the seller's creditors, is a remedial statute, and must be applied with a view to cure the evil at which it was leveled; and a distinction between fraud in fact and fraud in law will not be ingrafted on the statute. because such construction might greatly impair its efficacy. (*Post*, *pp.* 423, 424.)

Acts cited and construed:  Acts 1901, ch. 133.

5. SAME. Purchaser of stock of goods from merchant, without notice to his creditors, cannot defend on the ground of acquies-

cence, estoppel, abandonment, or laches, for their failure to sue for fourteen months.

Where the sale and purchase of a merchant's stock of goods in bulk, or a half interest therein, was fraudulent and void as against his creditors, upon the ground that the required notice was not given to them, the purchaser cannot defend against the suit of such creditors upon the ground of acquiescence, estoppel, abandonment, or laches, where the creditors simply refrained from suing for fourteen months, and allowed the purchaser to sell such goods, where he was not misled or prejudiced thereby. (*Post, p.* 425.)

6. SAME. Surety, whether released or not, paying note, and taking assignment thereof, is a "creditor" entitled to protection against sale of merchandise in bulk, without notice, where his assignor was a creditor entitled to such protection.

Whether a surety was released or not by the extension of the time of payment of the note, made several times, without his consent, in consideration of the payment of interest in advance, is immaterial, where he pays the note and takes an assignment thereof from the holder; and in such case he has all the rights of the assignor, whether the assignor knew of his rights or not. Such assignee is not a mere volunteer, but is a "creditor" entitled to protection under the statute (Acts 1901, ch. 133) regulating the sale of the stocks of goods of merchants, and declaring bulk sales, without the required notice, to be fraudulent and void as to the creditors of the selling merchant, where such assignor was a creditor entitled to protection under said statute. (*Post, pp.* 418, 419, 425.)

Acts cited and construed: Acts 1901, ch. 133.

7. SAME. Provision for attorney's fee in merchant's note will be enforced in favor of assignee and against purchaser of merchant's stock of goods, without notice.

A provision in a note for an attorney's fee of five per cent. is a part of the contract evidenced by the note, and will be enforced in favor of the surety thereon paying the same and taking an assignment thereof from the holder, as against the purchaser of

a stock of merchandise from the maker (a merchant), without giving the required notice to the creditors of such merchant. (*Post, p.* 425.)

Acts cited and construed: Acts 1901, ch. 133.

## FROM GILES.

Appeal from the Chancery Court of Giles County.— W. S. BEARDEN, Chancellor.

STEWART WILKES and E. E. ESLICK, for complainants.

J. D. WOODWARD, for defendants.

Mr. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Prior to May 5, 1910, Ed F. Anderson was engaged in the retail drug business at Pulaski, this State, trading under the name of the Sumpter Drug Company, a name long and favorably known in the business life of that city. On the day just mentioned he sold a half interest in the business to defendant Claud Elledge, at the price of $4,000, of which sum $2,500 was paid in cash, and the residue in short installments, all within a few months. As a part of the transaction of purchase, an equal partnership was formed between the two; the whole stock being estimated at $8,000. At this time Anderson was indebted to various persons in various amounts, aggregating between $7,000 and $8,000. Elledge knew nothing of this indebtedness. He inquired

of Anderson as to the extent of his indebtedness, pending the negotiations, and was informed that the latter owed only a few hundred dollars; Anderson showing him a book purporting to contain the amounts of these debts, and the names and addresses of the creditors. These Anderson said he would pay out of the purchase money. Anderson owned practically no other property besides the stock of goods, and therefore was really insolvent when he sold to Elledge; but the latter did not know this. Anderson was generally supposed, in Pulaski, to be a man in good circumstances, and possessed of a prosperous business; only a few persons being aware of his real condition. Elledge trusted the general reputation of Anderson, and his promise to pay the few small debts which he admitted owing, and so purchased a half interest in the stock without complying with the "Bulk Sales Law." Within three months after the purchase Anderson's creditors began to make themselves known and to demand payment. Elledge disclaimed all obligation to any of them, saying boldly to all that he owed them nothing, and would pay them nothing, and if they thought that he was bound in any way to sue him, and he would defend himself in court. Anderson paid some of his creditors and postponed some, but left a large number unsatisfied. So matters continued until May 25, 1911, when Anderson suddenly died. Within a few weeks thereafter the present suit was brought against Elledge, to hold him liable for the value of the goods to the extent of the debts described in the bill, less in the aggregate than the value of the half interest.

he had bought from Anderson.   The action was based on the theory that, Elledge having failed to comply with the "Bulk Sales Law," his purchase was fraudulent in law, and he had thereby exposed himself to suit by the creditors of Anderson for the value of the goods, as in a case where a conversion has taken place, and the complainant, waiving the tort, sues for the value of the property converted.   Between the date of the purchase made by Elledge and the death of Anderson, a period of more than a year, the firm had sold goods at retail and had from time to time replenished the stock, until there was hardly any of the original stock left at the time the bill was filed.   After the death of Anderson, his administrator sold the half interest of Anderson's estate to Elledge for $2,750.   It does not appear what disposition had been made of this money.

The chancellor granted a recovery in favor of certain of the complainants, and from this decree defendant Elledge, the only real defendant, did not appeal.   He dismissed the bill as to complainants Thomas E. Daly and E. E. Bennett, and they have appealed.

It does not appear from the chancellor's decree on what ground he based his decision against the complainants last mentioned as distinct from those to whom he granted relief, but the defendant Elledge interposes several grounds of defense, viz.: That a sale of a half interest in a stock of goods, where the purchaser contemporaneously becomes a partner therein with the seller, does not fall under the "Bulk Sales Law," and there-

fore, he was not bound to comply with the terms of that law, and his purchase was not fraudulent in law; secondly, that if he was mistaken in this, still complainant's only remedy was by attachment of the stock of goods, or the half interest he had purchased, and that complainants had no legal right to forego this remedy, and sue him for the value of the goods; thirdly, that complainants had, by failing to sue for more than a year after the purchase, acquiesced in the purchase, and estopped themselves from suing, and had conclusively waived and abandoned any right to sue; fourthly, that by reason of the same lapse of time the complainants must be repelled under the doctrine of laches.

An additional special defense made against Thomas E. Daly was based on the following facts: Daly was bound as surety of Ed F. Anderson to one O. W. McKissack on a promissory note for $1,000. This note was, after maturity, several times extended for the period of a year by the payment of interest in advance, without the knowledge of Daly, the surety; that, notwithstanding this fact, Daly, when called upon for payment by McKissack, after the death of Anderson, did not claim the release and discharge which the law allowed him under these facts, but paid the amount of the note and interest, and took an assignment thereof from McKissack. Hence, it is argued he is a mere volunteer and was not such a creditor as the legislature had in view when it enacted the "Bulk Sales Law." It is further said the right of action, if any, was in McKissack, and that there is no allegation in the bill asserting the right

of subrogation to McKissack's right of action. Daly, in the bill, sets out the note in full, alleges that he was surety and that he took an assignment thereof, and sues as holder and owner of the note.

The bill stated fully the facts concerning the sale of the half interest by Ed F. Anderson to Elledge, that the Bulk Sales Law was not complied with, alleged that the sale was fraudulent therefore in law, and also fraudulent in fact, that the stock after such purchase by Elledge had been sold from and replenished from time to time, in the usual course of the business of retail merchandise, until at the time of the filing of the bill the old stock was so intermingled with new purchases that it would be impossible to distinguish the new from the old. The answer admitted that the Bulk Sales Law had not been complied with, averred that full value had been given for the half interest purchased, that defendant made inquiry of Anderson as to the amount of his debts, and was informed that he owed only a few hundred dollars, and these debts he promised to pay out of the cash payment of $2,500, and the answer further denied all fraud.

The prayer of the bill was that complainants be granted a personal judgment against defendant Elledge, that the sale from Ed F. Anderson to defendant Elledge be declared fraudulent in law and in fact, and be set aside, that complainants have a lien declared on the stock in their favor, that an attachment issue and be levied on the stock, and that a receiver be appointed to take charge of it. No attachment was ever in fact issued,

and no receiver was ever appointed; the case proceeding to judgment on complainants' asserted right to a personal recovery against Elledge.

Elledge gave full value for the half interest he purchased, and there was no evidence of actual fraud, but only of such fraud as the law infers from a failure to comply with the Bulk Sales Law, if that law applies to such a case as we have before us.

The law referred to is chapter 133 of the Acts of 1901, and reads as follows:

"An act to provide the terms upon which sales in bulk of stocks of merchandise, or of any portion thereof otherwise than in the ordinary course of trade may be made.

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that a sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent and void as against the creditors of the seller, unless the seller and purchaser shall at least five days before the sale make a full detailed inventory, showing the quantity, and so far as possible, with the exercise of a reasonable diligence, the cost price to the seller of each article to be included in the sale, and unless such purchaser shall at least five days before the sale, in good faith, make full, explicit inquiry of the seller as to the names and places of residence or place of business of each and all of the creditors of the seller, and unless the purchaser shall

at least five days before the sale, in good faith, notify or cause to be notified personally or by registered mail, each of the creditors of the seller of whom the purchaser has knowledge, or can, with the exercise of reasonable diligence, acquire knowledge, of the purposed sale and of the cost price of the merchandise to be sold, and the price proposed to be paid therefor by the purchaser; and the seller shall at least five days before such sale, fully and truthfully answer in writing each and all of said inquiries: Provided, however, no suit shall be brought or maintained by any creditor against such sell-or or purchaser within five days after he receive notice from any source of the intended sale and purchase, and any suit so brought shall be dismissed at the cost of the plaintiff in the case.

"Sec. 2. Be it further enacted, that whenever a notice as provided in section 1 of this act is sent as provided in section 1 of this act is sent by registered mail, the creditor or person to whom the notice is mailed shall be presumed conclusively to have received the notice, and the time of the notice shall be dated from the time of the mailing and registration of said notice."

We are of the opinion that the case before us falls within the terms of the act. The language of the act is: "A sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent and void as against the creditors of the seller, unless," etc. A half interest

---

Daly v. Drug Co.

is a portion of the stock. We do not think the act means that it must be a distinct portion or part severed from the whole stock. The sale of a half interest by a merchant for the purpose of taking the vendee into partnership is within the purpose and reason of the act, since it very materially changes the relation of the vendor's creditors to the stock, if such sale be valid. Before the sale a creditor could levy upon the whole stock. After the sale, if valid, the creditor of such vendor could not levy upon any of the stock, but only upon the vendor's interest in the whole, and in order to obtain this he would have to file a bill in equity and have an accounting with the new partner. So the former owner of the stock might admit three new persons into the business, and so reduce his own holding to a one-fourth interest, and so on as to smaller fractions—at the same time putting the proceeds into his own pocket and holding them beyond the reach of his creditors.

We shall now consider the question whether the remedy of the creditors was confined to the attachment of the property. We have some early cases (*Tubb* v. *Williams,* 7 Humph., 367, and *Simpson* v. *Simpson,* 7 Humph., 275) which so confine the remedy; but those cases were discredited in *Lazell* v. *Powell,* 1 Shan. Cas., 132, and *Solinsky* v. *Lincoln Savings Bank,* 85 Tenn., 368, 372, 4 S. W., 836. These cases and *Williamson* v. *Williams,* 11 Lea, 355, 370, seem to announce the doctrine that the property should be proceeded against if accessible; but if disposed of by the fraudulent vendee, in whole or in part, he may be held liable for the value

of so much as he has thus disposed of. In *Bank* v. *Haller*, 101 Tenn., 83. 52 S. W., 807, and *Dillard & Coffin* v. *Smith*, 105 Tenn., 372, 59 S. W., 1010, an advanced step was taken. It was held in these cases, in substance that a creditor of the vendor had the right to proceed against the property, or, treating the transaction as a tort against the property which should have been subjected to his debts, he may waive the tort and sue the fraudulent vendee for the value of the property. In the case last cited, it was held that he could pursue both remedies; that is to say, he could subject so much of the property as remained in the hands of the fradulent vendee, and hold him personally liable for the value of so much as he had sold. In the case before us it appears that practically all of the property had been sold when the bill was filed, or had been so intermingled with other property of the same kind as to be indistinguishable. Under such a state of facts we think there is no doubt the fraudulent vendee could be sued for the value of the goods so purchased by him.

That a sale in violation of the act above quoted must be held fraudulent as against the creditors of the vendor there is no doubt. *Cantrell* v. *Ring,* 125 Tenn., 472, 145 S. W., 166.

We do not think the various defenses of acquiesence, estoppel, abandonment, and laches, have any application to the controversy. The bill was filed about fourteen months after the sale was made. The defendant was not misled. He announced to every one that he did not consider himself liable, and would pay none of the debts

claimed against Anderson. His course was not changed by the delay in bringing suit, and he was put in no worse position. He could not complain if the creditors, instead of taking the goods from him by attachment, withheld suit, and so enabled him to sell the goods at a profit. Such delay could not be considered an evidence of acquiescence in the fraud. The defendant had no right to demand of the complainants that they sue at once, on pain of being considered as having agreed to what had been done. We are unable to see in the facts stated any evidence of abandonment. The complainants simply refrained from suing for fourteen months. We know of no obligation in law that required them to sue earlier.

The cases in our reports under which actions to enforce the personal liability of fraudulent grantees has been supported appear to have been cases of actual fraud. Does the same rule apply to cases of fraud in law? There is an element in actual fraud, that of moral turpitude, which does not appear in cases of the character we have before us; hence the element of punishment suggested in *Lazell* v. *Powell,* supra, cannot apply. Still we are unable to see why the theory of conversion, as set forth in *Bank* v. *Haller* and *Dillard & Coffin* v. *Smith* does not apply to the one case as well as the other. Moreover, the statute in question was a remedial one, and should be applied with a view to cure the evil at which it was leveled. If distinctions should be ingrafted on that act, based on the difference between fraud in fact and fraud in law, we fear its efficacy might be greatly impaired. The act has long been on our statute

books, and ought to be known to every one. It is very plain in its terms, and if any one acts in violation of it he does so with his eyes open, and the court cannot relieve him of the consequences of his disregard of it.

We think there is nothing in the special defenses made to the claim of complainant Daly. Whether he was released from the McKissack note by the giving of time to the maker, his principal, without his knowledge or consent, we need not inquire. He took an assignment of the note from the holder, McKissack, and that was sufficient. Having taken the assignment, he had whatever right of action McKissack possessed. It is immaterial that McKissack, at the time he transferred the note, did not know that he had such right of action.

We are of the opinion on the grounds stated that the complainants should have been granted relief by the chancellor to the full amount of their debts and interest.

The McKissack note, transferred as stated to complainant Daly, contains a provision for an attorney's fee of five per cent. Daly insists that he should be granted a decree for this sum also. We think this contention is sound. The provision for attorney's fees is a part of the contract evidenced by the note, and there is no reason why it should not be enforced.

It results that the decree of the chancellor, dismissing the bill as to complainants Daly and Bennett, must be reversed, and relief granted here in accordance with this opinion. The costs of the cause will be paid by the defendant Elledge.