SLAUGHTER v. COOPER CORPORATION, NO. 2.—97 S. W. (2d) 648.

Eastern Section.    June 20, 1936.

Petition or Certiorari denied by Supreme Court, October 17, 1936.

John T. Dehart, of Bristol, and John F. Blevins, of Blountville, for plaintiff in error.

Bradley Roberts and John E. O'Dell, Jr., both of Bristol, for defendant in error.

McAMIS, J. This is an action to recover under the Bulk Sales Statute (Code, section 7283 et seq.). Plaintiff below, the Cooper Corporation, here the defendant in error, is a creditor of the Rubber Products Company, a concern formerly engaged in the tire and battery business in Bristol, Tenn., and owned by two partners by the name of Tousley. Plaintiff in error, Arthur P. Slaughter, purchased a quantity of tires and batteries from the Rubber Products Company in the spring of 1935 which the circuit judge held were purchases in bulk made without compliance with the statute. A recovery in the amount of $223.50 was allowed, and an appeal in error by the defendant below brings the case here for review.

The record discloses without substantial controversy that the Rubber Products Company discontinued the operation of its business in Bristol within a week after April 18, 1935, when the partners removed the remaining portion of their stock of merchandise to the state of Florida. Slaughter testified to the following purchases during the last week of Rubber Products Company operated: April 13, 1935, tires, $87; April 15, 1935, consigned stock at Abingdon, Va., $20; April 16, 1935, consigned stock at King's store, $20; April 17, 1935, consigned stock Joe Grubb's, Johnson City, $40; April 18, 1935, consigned stock Arnold Wails, Kingsport, $40; April 18, 1935, tires, tubes, and auto accessories, $149. In addition to the foregoing, other purchases were made between February 26, 1935, and April 8, 1935, ranging in amount from $12.50 to $68 and aggregating $243.50.

It appears further without dispute that immediately following the removal of the Tousleys plaintiff in error placed one of his employees in the store and began to sell articles at retail. He later secured a permanent location and removed a part of the merchandise to that location where it was intermingled with other merchandise belonging to plaintiff in error.

The first question presented for determination is whether these sales were made otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business. We think the circuit judge was correct in holding that they were sales in bulk made out of the usual and ordinary course of business of the Rubber Products Company.

The value of the stock remaining after these purchases were made is not definitely shown, but we think the inference is that these sales represented a substantial portion of the stock of the seller. The Rubber Products Company was engaged in the retail sale of tires and tubes at the location in question, but it appears that it followed the practice of consigning merchandise to retail dealers located in Bristol, Abingdon, Johnson City, and Kingsport. In fact, a substantial part of the merchandise purchased by plaintiff in error was merchandise held by dealers on consignment, as appears from the statement of purchases hereinbefore set forth. Plaintiff in error testified that it was necessary for him to engage a truck to go after this merchandise and return it to Bristol, and he admitted that he had never previously made such purchases of consigned stocks from the Rubber Products Company.

These facts, coupled with the facts that the Tousleys removed the remaining stock to Florida within a few days after April 18, 1935, and the fact that plaintiff in error occupied the same premises thereafter for a short time and began to sell the merchandise at retail and considering the size of the purchases, indicate that these sales were made by the seller in contemplation of a discontinuance of its business and not in the ordinary and usual course of business.

It has been held that a sale of goods to the value of one-half the whole stock is within the statute. Mahoney-Jones Company v. Sams Bros., 128 Tenn., 207, 159 S. W., 1094. And that a sale by one partner to another of his half interest in a stock of merchandise is a sale otherwise than in the ordinary course of trade, and is fraudulent unless the Bulk Sales Law is complied with. Howell v. Howell, 142 Tenn., 31, 215 S. W., 278, 279.

Again, it has been held that a chain store corporation, in keeping with its usual custom of disposing of unprofitable stores, violated the statute in selling a particular store, the operation of which had proved unprofitable, the court saying that a sale need not be un-

precedented to be within the statute. Keller v. Fowler Bros. & Cox, 148 Tenn., 571, 256 S. W., 879.

"The statutory test is whether the sale was made in the usual way in which a merchant owing debts conducts his business, or whether he takes an unusual method of disposing of his property in order to get the money for his own use, and leave his creditors unpaid." Howell v. Howell, supra.

The point is made that an action by a creditor under the Bulk Sales Statute is purely equitable and cannot be maintained in a court of law. We have found no case dealing with this question, but we think such an action can be maintained either in the chancery court or in a court of law.

An action of this nature is not to be confused with an action to set aside a fraudulent conveyance of property. Such a suit, being of a purely equitable nature, could not be brought in a court of law. However, a bulk sale of merchandise made without compliance with the statute and otherwise than in the ordinary course of business of the seller is not void because of a fraudulent intent and purpose but because declared so by statute. It has been many times held that a vendee purchasing in violation of the statute subjects himself to personal liability for the value of the goods, if sold or disposed of by him or comingled with his own goods.

Said the court in the case of Daly v. Drug Company, 127 Tenn., 412, 424, 155 S. W., 167, 170, Ann. Cas. 1914B, 1101:

"The cases in our Reports under which actions to enforce the personal liability of fraudulent grantees has been supported appear to have been cases of actual fraud. Does the same rule apply to cases of fraud in law? There is an element in actual fraud, that of moral turpitude, which does not appear in cases of the character we have before us; hence the element of punishment suggested in Lazell v. Powell, supra [1 Shan. Cas., 132], cannot apply. Still we are unable to see why the theory of conversion, as set forth in Bank v. Haller [101 Tenn., 83, 52 S. W., 807] and Dillard & Coffin v. Smith [105 Tenn., 372, 59 S. W., 1010], does not apply to the one case as well as the other. Moreover, the statute in question was a remedial one, and should be applied with a view to cure the evil at which it was leveled."

The action being in conversion, a court of law would have jurisdiction to entertain the suit of an aggrieved creditor. It has long been an established practice to institute suits of this nature in the circuit court as well as in the chancery court. A case illustrating this practice is that of Colonial Milling Company v. Holt Bros., 3 Tenn. App., 617.

It is next insisted that the court erred in rendering judgment in personam for the sum of $223.50 instead of for only a pro

rata share of the value of the property purchased in bulk. Fecheimer-Keifer Co. v. Burton, 128 Tenn., 682, 683, 164 S. W., 1179, 51 L. R. A. (N. S.), 343, is cited. In our opinion the principles announced in that case have no application to this case, for the reason that the sales involved in this case totaled $600, while the indebtedness due all creditors was less than that amount. The only proof on this question is that the Rubber Products Company owed only one other debt in the amount of $250 at the time of the transfers. Hence there is no occasion to pro rate the value of the merchandise transferred.

It is also insisted that plaintiff below was erroneously permitted to recover without an affirmative showing that (a) the Rubber Products Company failed to comply with the statute, and (b) that it was insolvent at the time of said transfers.

As to the first of these contentions, we think it is fairly inferable from the testimony of plaintiff in error that the only inquiry made of the seller was on April 18, the date of the last purchase. He testified that on that date he inquired of Tousley whether all of the property was paid for and that Tousley stated that it was. While it is true he did not testify that this was the only inquiry made prior to the transfers, it is hardly reasonable to suppose that, if he had made inquiry and investigation five days previously as the statute requires, he would have made this additional inquiry on the date of his last purchase.

Moreover, the factual basis necessary to establish a compliance with the statute arises out of matters peculiarly within the knowledge of the purchaser, and ordinarily the aggrieved creditor is without any knowledge enabling him to show a noncompliance with the statute. We think the creditor in such case is only required to show that at the time of the transfer he was an existing creditor entitled to a compliance with the provisions of the statute; that he has not since been paid; and that the sale was otherwise than in the ordinary course of business of the seller. When he has done this, the burden is upon the purchaser to show that he has complied with the statute and to prove facts relieving the sale of the implications of fraud arising from a noncompliance with the statute. 27 C. J., 892.

As to the contention that the creditor must also establish the insolvency of the seller, we have been cited to no case, and have found none, holding that the creditor must show that the seller was insolvent at the time of the transfer. We have examined the case of Daly v. Drug Co., 127 Tenn., 412, 416, 155 S. W., 167, Ann. Cas. 1914B, 1101, cited by counsel to support this proposition, but we do not find that insolvency of the debtor was held to be a condition prerequisite to the maintenance of such a suit. The statute provides that such sales of merchandise as those here under

consideration shall be void unless the statute be complied with. It makes no exception as to transfers made by solvent debtors.

Other questions are raised by the assignments which we find without merit. We conclude that there is no error in the judgment below. All assignments of error are, accordingly, overruled, and the judgment below will be affirmed, with costs.