MARY FREEMAN v. COLLIER RACKET COMPANY ET AL.

No. 1656.    Decided April 10, 1907.

**Landlord's Lien—Sale of Merchandise—Regular Course of Business.**

A merchant whose business had been nearly all at retail, disposed of his stock at less than cost, in a "closing out sale," lasting forty-two days, and openly conducted for the purpose of going out of business. Purchasers thereat of goods in lots running in value from $150 to $1,500, did not buy same in the regular course of business, and took them subject to the landlord's lien for rent (Rev. Stats., art. 3288), and the court should have so instructed the jury. (Pp. 476–479.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*Maco & Minor Stewart* and *Geo. T. Burgess,* for appellant.—A sale made at a time when a tenant is conducting a closing out sale is not made in the regular course of business. Rev. Stats., art. 3251; Marsalis v. Pitman, 68 Texas, 624; Livingston v. Wright, 68 Texas, 707; Block v. Latham, 63 Texas, 414; Lehman v. Stone, 16 S. W. Rep., 784; Ghio v. Shutt, 14 S. W. Rep., 860; Newman v. Ward, 46 S. W. Rep., 868;

Allen v. Brunner, 75 S. W. Rep., 821; York v. Carlisle, 19 Texas Civ. App., 269; Weil v. McWhorter, 10 So., 131; Fowler v. Rapley, 15 Wall. (U. S.), 328; Grant v. Whitwell, 9 Iowa, 158; Gilbert v. Greenbaum, 56 Iowa, 211.

*Harris & Harris,* for Garbade, Eiband & Co., *Jas. B. & Chas. J. Stubbs,* for Blum Hardware Co. and E. V. Collier, appellees.—That question should have been submitted to the jury: Wallace v. Southern Oil Co., 91 Texas, 21; Scripture v. Scottish Co., 49 S. W., 644; Galveston, H. & S. A. R. v. Harris, 53 S. W., 599; McCartney v. McCartney, ·53 S. W., 390; Mitchell v. McLaren, 51 S. W., 270; Matula v. Lane, 56 S. W., 112.

As to usual course of business: Marsalis v. Pitman, 68 Texas, 624; Roberts v. Hall, 37 Conn., 205; Merriam v. Granite Bank, 8 Gray, 254; Crosby v. Grant, 36 N. H., 273; Kellogg v. Curtis, 69 Me., 214; Christianson v. Farmers' Asso., 5 N. D., 449; Tescher v. Merea, 118 Ind., 586; Baily v. Smith, 14 Ohio St., 396; In re Watson, 12 Can. L. T., 70.

BROWN, ASSOCIATE JUSTICE.—Certified question from the Court of Civil Appeals for the First Supreme Judicial District as follows:

"Mary Freeman, appellant herein, sues the Collier Racket Company, Jake Davis, the Blum Hardware Company, Garbade, Eiband & Co., and F. V. Collier, the purpose of the suit being to recover of the Collier Racket Company, her lessee, and Jake Davis, its guarantor, the rent alleged to be due for a storehouse in the city of Galveston, leased by appellant to said Collier Racket Company for a period of forty-two and a half months, ending September 30, 1904.

"It was alleged that the lessee failed to pay the rent for the months of May, June, July, August and September, amounting to $1,375 which was due.

"Appellant also seeks to hold the other defendants, the Blum Hardware Co., Garbade, Eiband & Co., and E. V. Collier, liable to the extent of the value of certain goods bought by them of the Racket Company which were alleged to be covered by the lien for the unpaid rent.

"Defendants, Garbade, Eiband & Co., the Hardware Company, and E. V. Collier, answered by general denial and specially pleaded that the goods purchased by them from the Racket Company were purchased in the regular course of business of the Racket Company, and that they took them relieved of the lien of the landlord for the rent.

"The cause was tried before a jury and resulted in a verdict in favor of plaintiff against the Racket Company and Jake Davis for $1,157.35 and against plaintiff and in favor of the other defendants as to plaintiff's demands against them.

"From this judgment against her and in favor of said defendants plaintiff appeals.

"The court submitted to the jury the issue as to whether or not the goods purchased by Garbade, Eiband & Co., E. V. Collier and the Blum Hardware Company, respectively, from the Racket Company were purchased in the regular course of business. The jury were instructed that if they found that the goods were purchased in the regular course of

business they should return a verdict for said defendants, respectively. If they were not so purchased the verdict should be against them, respectively, for the amount of their respective purchases, except as to Garbade, Eiband & Co., whose purchases amounted to more than the rent shown to be due, the measure of recovery against them being the amount of the rent due.

"It is assigned as error that the verdict of the jury is contrary to the evidence. Appellant also assigns as error the refusal of the court to instruct the jury, at the request of appellant, that the sales to Garbade, Eiband & Co., Blum Hardware Co., and E. V. Collier were not made in the regular course of business.

"From the undisputed evidence are to be gathered the following facts with regard to the sales in question.

"The Collier Racket Company were lessees of appellant, occupying a storehouse in the city of Galveston under a written lease for forty-two and a half months, which expired September 30, 1904. Of the rent for May, June, July, August and September, 1904, amounting to $1,375, there is due and unpaid $1,157.35. Jake Davis by written memorandum at the foot of the lease contract guaranteed the payment of the rent.

"On March 1, 1904, the Collier Racket Company began what is known as a 'closing out' sale. The purpose of the sale was to close out their entire stock and go out of business. This sale was advertised in the newspapers, and a large banner was stretched across the sidewalk in front of its store announcing the sale and offering the stock in bulk or in retail. The entire stock of about $17,000 was disposed of, in various amounts and to various purchasers, in about forty-two days, whereupon the racket company went out of business and vacated the premises, leaving unpaid the rent for the balance of the term, that is, for the months of May, June, July, August and September.

"During the progress of this closing out sale the defendants purchased of the goods in the leased storehouse in amounts as follows: Garbade, Eiband & Co., $1,355.31; Blum Hardware Company, $199.67, and E. V. Collier, $221. Garbade, Eiband & Co. bought the entire stock of toys at a discount of thirty-three and one-third percent from the cost price, and the entire stock of crockery at twenty percent discount. Other goods were sold for twenty and some for ten percent discount from cost.

"The Racket Company did both a wholesale and retail business, but their business was all retail and in small quantities except about ten or fifteen percent at wholesale.

"All of the defendants knew that the Racket Company was closing its business, and disposing of its entire stock for the purpose of going out of business and also knew that appellant owned the building occupied by the Racket Company. The sales were made substantially in the manner in which such closing out sales are usually made.

"In addition to the foregoing facts, which are taken from the opinion of this court, we find that the purchases of Garbade, Eiband & Co. were as follows: On March 18, one invoice of $221.28 and another of $653.31; on March 23, one invoice of $374.42, one $63.98, one $55. and one $50, amounting to $1,417.99, of which $62.48 was returned. The purchases of the Blum Hardware Company were, in March, one

lot of $153.77 and one $45.60. The purchases of E. V. Collier were one on April 12, $150, and as to the balance of the $221 bought by them the evidence is uncertain as to whether it was in one or more purchases.

"Upon this evidence it was held by this court that the trial court should have instructed the jury, as requested by plaintiff, that the sales were not made in regular course of business.

"As material to the determination of a motion for rehearing now pending before us, we certify to the Honorable Supreme Court the question:

"Did this court err in holding as above stated?"

We answer that the Court of Civil Appeals did not err in its judgment in this case. In support of our answer we adopt the following extract from the opinion of Judge Reese:

"It is provided by statute that all persons leasing or renting any residence, storehouse or other building, shall have a preference lien upon all the property of the tenant in such residence, storehouse or other building for the payment of the rents due and that may become due. (Art. 3251, Rev. Stats.) It is further provided, however, that such lien shall not attach to the goods, wares, and merchandise of a merchant, trader or mechanic, sold and delivered in good faith in the regular course of business to the tenant. (Rev. Stats., art. 3238.) The words 'to the tenant,' as written in the statute, have been construed to be intended 'by the tenant.' (Marsalis v. Pitman, 68 Texas, 627.) It was clearly the intention of the Legislature to exempt from the operation of the landlord's lien goods sold in good faith in the regular course of business 'by the tenant' and not 'to the tenant.' Any other construction would destroy the lien intended to be given for any practical use.

"In Marsalis v. Pitman, supra, it was held that a sale by a tenant occupying a storehouse as a merchant, of his entire stock of goods, then on the rented premises, to certain of his creditors, although made in good faith, was not 'in the regular course of business,' and that the lien of the landlord on sufficient of the goods bought by one of the creditors was not divested by the sale. It may be that the court rested its opinion upon the fact that the goods were sold to creditors in satisfaction of the indebtedness of the tenant as in the case of Weil v. McWhorter (10 So. Rep., 131), which, however, does not appear from the opinion.

"In this view it can not be said that the case is of any value as authority in determining the issue as to whether the sales in the present case were made in the regular course of business within the meaning and intent of the statute.

"These sales were made openly and notoriously for the purpose of closing up the business of the tenant. He offered the entire stock either in bulk or in such lots and quantities as suited purchasers. The sales were made at a large discount from the cost price, which, however, of itself would not have been of much importance. The entire stock of $17,000 was thus disposed of in about forty-two days and the defendants here knew that the sales were thus made and for the purposes indicated.

"If the racket company had, as they would have done if such a purchaser could have been found, sold their entire stock in one sale, to one

purchaser, it would hardly be contended that such a sale was 'in the regular course of business."

"That the tenant failing to find a purchaser for the entire stock in bulk, but still in pursuance of his intention to sell the entire stock, and go out of business, sold to different purchasers in larger quantities, and in a very much different manner from that in which he generally conducted his business, we think would be equally a departure from the general course of business. The general course of the tenant's business was to sell at retail, and in very small quantities, and evidence showed the average number of sales per day to be two thousand. It is true that not all of his sales were of this character, and that he sometimes sold in larger quantities, but such sales were not of frequent occurrence and amounted to not more than ten or fifteen percent of his sales generally. Such sales as were made to defendants can not be said to have been made in the general course of business. The general course of business of the Racket Company was to buy and sell as merchants such articles as they dealt in, and in this way to conduct a regular mercantile business. It was in contemplation of such business that appellant leased the premises.

"Appellees contend that the sales made to them were according to the usual course of business in case of sales made for the purpose of closing out a business. With equal force it might be contended that a sale of the entire stock, to one purchaser in one sale, was in the usual course of business in way of closing out sale, but a closing out sale, such as this was, was itself out of the general course of business.

"The primary purpose of the statute is to give the owner of the building a lien on the goods, wares and merchandise of his tenant to secure the payment of the rent. As the provision giving this lien, unless qualified in some way, would so embarrass a merchant and trader in the general conduct of his business as to operate a serious restraint upon trade, an exception was made in case of such goods as might be disposed of in the general course of business by the tenant.

"This purpose of the law emphasizes the view we take of it in its application of the present case.

"The effect of the undisputed testimony being to show that the sales to defendants were not made in the general course of business, the jury should have been so instructed."

The following cases support the conclusion of the Court of Civil Appeals: Babbitt v. Walbrun, Case No. 694, 2 vol. Fed. Cas., p. 283; Fowler v. Rapley, 15 Wall., 328; Weil v. McWhorter, 10 So. Rep. (Ala.), 131; Grant v. Whitwell, 9 Iowa, 152.