## Hal Fawver, Appellant, v. George E. Flesher, Appellee.

1. FRAUDULENT CONVEYANCES, § 80*—*when gift of mercantile business by father to son deemed fraudulent*. The facts that a father is largely indebted when he makes a voluntary gift of his mercantile business to his son and that he shortly thereafter becomes insolvent render the transaction fraudulent as to creditors.

2. FRAUDULENT CONVEYANCES, § 271*—*when evidence shows transfer of property by father to son to be fraudulent*. Evidence examined and *held* to show that the transfer of property by a father to his son was fraudulent as to the former's creditors.

3. APPEAL AND ERROR, § 112*—*when error of trial court in passing upon propositions of law and fact not reviewed*. On appeal in a replevin proceeding by judgment creditors to recover property claimed by defendant under a transfer by the judgment debtor, where the court finds that the transfer was fraudulent as to creditors, it will not determine whether or not the trial court may have erred in passing upon the propositions of law and fact submitted.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of McLean county; the Hon. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed October 11, 1917. Rehearing denied December 1, 1917. *Certiorari* denied by Supreme Court (making opinion final).

HERRICK & HERRICK and STERLING & WHITMORE, for appellant.

DE MANGE, GILLESPIE & DE MANGE, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

On June 16, 1915, a judgment by confession for the sum of $6,568.05 was entered in the Circuit Court of McLean county in favor of L. J. West and against J. H. Fawver. An execution was issued on the judgment and appellee, as sheriff, levied upon a stock of general store merchandise, fixtures, etc., located at Monarch, Illinois, as the property of said J. H. Fawver, who is the father of appellant. Appellant regained possession of the property levied upon by a writ of replevin. The replevin suit was submitted to the court for trial without the intervention of a jury and the pleadings present the issue whether appellant, Hal Fawver, or his father, J. H. Fawver, owned the property involved at the time it was levied upon by appellee. The court found that J. H. Fawver was the owner of the property at the time that the judgment was rendered, and that it was subject to levy under execution for his debt, and entered judgment against appellant for return of the property to appellee and for costs of suit. From this judgment appellant prosecutes this appeal.

For several years prior to 1907, L. J. West and J. H. Fawver were business partners and engaged in the grain business at Sabina, Illinois. In 1907 this partnership was dissolved and J. H. Fawver continued in the grain business. In 1909 he purchased a general store at Monarch, Illinois, which was valued at that

time, including the fixtures, at about $2,000. J. H. Fawver was also a farmer and resided on his farm about four miles from the store. Between 1909 and 1911 he had employed two different men to manage the store for him. The evidence shows that after the dissolution of the partnership, J. H. Fawver engaged heavily in speculation in grain. In 1910 he borrowed large sums of money from the J. Keenan's Bank at LeRoy, and at this time West was surety on his notes to the extent of about $15,000. His indebtedness to the bank was extended from time to time and in 1911 the bank held his note for $13,372.55, with West as surety thereon, the personal note of West of $5,000 and his own note to one Kline for $3,500, with West as surety thereon. In 1914, to secure West for the use of the $5,000 note, J. H. Fawver deposited with the bank his own $5,000 note payable to West. In 1911, J. H. Fawver sold a farm consisting of 160 acres for $21,000, but it appears that no part of this money was ever paid by him upon his indebtedness to the bank for which West was surety. In 1914, the bank demanded payment of J. H. Fawver's notes and the latter, being unable to pay them, West as surety thereon was compelled to pay the loans, amounting to about $22,500 in all, and the bank returned to West the $5,000 note before mentioned, which J. H. Fawver had placed with the bank as surety for West.

In 1911, appellant was between 17 and 18 years of age, and testified that his father, J. H. Fawver, told him if he would run the store for him he would give him a half interest in it. Appellant thereafter managed the store but continued to live with his father. In January, 1914, West demanded reimbursement of J. H. Fawver for the moneys he had been compelled to pay as surety on his notes. Immediately thereafter appellant ceased to deposit the store account in the bank and kept the store money in a chiffonier at his

father's house where he lived. The evidence further
shows that in the spring of 1914, appellant and his
father had some disagreement, in consequence of which
he left the store and hired out to a farmer and worked
for him as a farm hand until August of that year.
During this time J. H. Fawver and his employee,
George Thing, ran and managed the store. About the
1st of June, 1915, West notified J. H. Fawver that,
unless he paid him the indebtedness mentioned, he
would bring suit to collect it. On June 10, 1915, J. H.
Fawver executed a bill of sale of the store business
to appellant, his son. Thereupon West took the judg-
ment mentioned upon the $5,000 note and began suit
in assumpsit to recover the balance of the $22,500, and
J. H. Fawver went into voluntary bankruptcy.

After appellant received the bill of sale, he again
commenced depositing money received from the store
in the bank. After appellant left the store in 1914, and
went onto the farm to work, he claims that he and his
father settled their differences and that his father
made a proposition to him to turn over to him the
other half interest in the business. It appears that
J. H. Fawver, his father, had drawn out of the busi-
ness cash to the amount of about $600, and appellant
claims that his father proposed to him that, if he would
come back and take up the management of the store,
his father would turn over to him the whole business
after he had drawn out of it enough additional money,
which together with the $600 he had already drawn
out, would make the $2,000, which his father had orig-
inally invested in the business. Appellant testified
that he accepted this proposition and went back into
the store in the month of August and has remained
there ever since. There thus remained $1,400 to be
drawn out of the business to reimburse J. H. Fawver
for his original investment. J. H. Fawver testified
that he drew out of the business during the fall and
spring of 1915, this amount by paying for grain with

store accounts, after which he considered appellant as the owner of the entire store business, and on June 10, 1915, executed the bill of sale heretofore mentioned. The proofs show that when the first alleged agreement was made between appellant and his father, wherein his father agreed to give to appellant a one-half interest in the store if he would manage it for him, appellant was but 18 years of age, and there was no other evidence in the record of his emancipation. The contract was an executory and conditional one with no agreement as to what period of time appellant would have to manage the store before he would become entitled to the ownership of the one-half interest therein. After appellant's disagreement with his father in the spring of 1914, he left the store and went to work on a farm and continued in said work for about 6 months, or until the 1st part of August of that year. His father testified, in substance, as follows: "He wanted his half, and I was waiting for him to come back. I told him if he would come back and attend to the business right and look after it properly, I would take out the original investment for the stock, and he could have it all. He said he would do it." Appellant never drew out any of the profits of the business but only received therefrom $5 per week. His father at all times listed the property for taxation as his own and paid the taxes thereon. The accounts for goods purchased for the store from the wholesale firms remained in the name of J. H. Fawver until after the execution of the bill of sale. No inventory of the stock of merchandise was ever made. While appellant's father may not have been actually insolvent between 1911 and 1914, he was indebted to a large extent and appellee was one of his creditors and was also surety on his notes, aggregating over $15,000, which he afterwards had to pay. At the time the alleged bill of sale was made in 1915, J. H. Fawver was unquestionably insolvent and appellee was his creditor in the sum of

$22,500. The record is large and there are many other facts and circumstances not mentioned herein shown by the proofs which tend to sustain the finding of the court that as against appellee the alleged gift or sale by J. H. Fawver to appellant of the store business and stock of merchandise in question was fraudulent.

The actual insolvency of J. H. Fawver was not necessary in order to render the transaction with appellant void. The fact that J. H. Fawver was largely indebted when he made the voluntary gift to appellant and shortly thereafter became insolvent makes the transaction fraudulent as to the creditors of J. H. Fawver. *Hauk v. Van Ingen,* 196 Ill. 20; *Kennard v. Curran,* 239 Ill. 122. In the case of *Kennard v. Curran, supra,* it is held: ''There may be expressions in certain decisions which lend countenance to the idea that a voluntary conveyance will not be invalid for fraud if made when there is property remaining, the value of which at the time amounted to all the indebtedness, but the settled rule now is that if a person is largely indebted and makes a voluntary conveyance and shortly after becomes insolvent, it is proper to set aside the conveyance as fraudulent.''

The evidence is sufficient to establish the fact that there never was such an executed contract in 1911 between appellant and his father as would invest the former with the ownership of a half interest in the merchandise and business of the store, and that the bill of sale executed on June 10, 1915, assuming to convey the remaining interest in the stock of merchandise of J. H. Fawver to appellant, was made to avoid the effect of the Bulk Sales Act of 1913 [Callaghan's 1916 St. Supp. ¶ 1021 (1) *et seq.*], which is applicable only to the sale, transfer or assignment in bulk of the *major* part or the *whole* of a stock of merchandise. The court was justified by the proofs in finding that the whole transaction between appellant and his father, J. H. Fawver, was fraudulent as to the

creditors of the latter. This being true, it is unnecessary to determine whether the court may have made some error in passing upon the propositions of fact and law submitted. The judgment of the Circuit Court is affirmed.

*Affirmed.*