### SABIN v. HORENSTEIN.

#### In re JUDKIS' ESTATE.

(Circuit Court of Appeals, Ninth Circuit. October 6, 1919.)

#### No. 3321.

BANKRUPTCY ⚖️178(1)—SALE IN BULK AS FRAUDULENT TRANSFER.

Sales by bankrupt, a merchant, to defendant at different time of goods in job lots *held* not so out of his usual course of business as to constitute sales in bulk, within Oregon Sales in Bulk Act, as amended by Laws Or. 1913, p. 538, or as to render such sales void for fraud; it appearing that bankrupt had made similar sales to others at various times during two or three years, and there being no sufficient proof that defendant knew of any fraudulent intent.

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Suit in equity by R. L. Sabin, trustee in bankruptcy of the estate of L. Judkis, against H. Horenstein. Decree for defendant, and complainant appeals. Affirmed.

L. Judkis, a merchant carrying a stock of men's furnishings, clothing, and shoes of the value of about $12,000, was on December 10, 1917, adjudged an involuntary bankrupt. During the months of July, August, September and October, 1917, the appellee purchased from the bankrupt merchandise in lots ranging from $6 to $225, aggregating about $1,000. The trustee in bankruptcy brought a suit against the appellee under the sales in bulk statute of Oregon (section 6069, L. O. L., as amended by Laws 1913, p. 538) to recover the value of the goods so sold. The law as amended is as follows: "It shall be the duty of every person who shall bargain for or purchase any goods, wares or merchandise in bulk, * * * for cash or on credit, to demand and receive from the vendor thereof, * * * at least five days before paying or delivering to the vendor any part of the purchase price or consideration therefor, or any promissory note or other evidence of indebtedness therefor, a written statement under oath containing the names and addresses of all of the creditors of said vendor, together with the amount of indebtedness due or owing, or to become due or owing by said vendor to each of said creditors."

Section 6070, as amended, provides that the vendor shall give notice to creditors at least five days before the consummation of such sale of his purpose in making the same, and that upon his failure to do so such sale

shall as to creditors be conclusively presumed fraudulent and void. Section 6072 defines "sales in bulk" as "any sale or transfer of goods, wares or merchandise, * * * out of the usual or ordinary course of the business or trade of the vendor, or whenever thereby substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed, or attempted to be sold or conveyed, to one or more persons, shall be deemed a sale or transfer in bulk, in contemplation of this act." Prior to the amendment the statute read as follows: "Any sale or transfer of a stock of goods, wares, or merchandise out of the usual or ordinary course of the business or trade of the vendor, or whenever thereby substantially the entire business or trade theretofore conducted by the vendor shall be sold or conveyed or attempted to be sold or conveyed to one or more persons, shall be deemed a sale or transfer in bulk, in contemplation of this act."

The evidence was that during the six months prior to the adjudication in bankruptcy the bankrupt had sold in job lots, including the sale to the appellee, merchandise of the value of $5,000 or $6,000, and that he had purchased the goods from various wholesale dealers on credit, and had not paid for the same. Upon the evidence the court below found that the appellee had not purchased the goods in violation of the statute and the complaint was dismissed.

Sidney Teiser and L. B. Smith, both of Portland, Or., for appellant. M. A. Goldstein and Frederick H. Drake, both of Portland, Or., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). It is contended that the court below erroneously construed the statute in holding that the intention thereof was to prevent persons who were dealing in merchandise from disposing of their entire stock, or the larger portion of it, or such proportion of it as will render the vendor less able to pay his obligations, and in holding upon the evidence in the case that the sales made to the appellee were not out of the usual or ordinary course of the business of the bankrupt. We are not convinced that the court below was in error in either respect. The court found upon the evidence, which was taken in open court, that during the two or three years prior to bankruptcy the bankrupt was doing both a retail and jobbing business, and that on numerous occasions he had sold goods in job lots, although the bulk of his jobbing business was done within three or four months prior to bankruptcy, and that the goods sold to the appellee were sold in the usual course. This finding was made upon the testimony of a number of witnesses, who testified that they had made various purchases in job lots, most of which were of small quantities of merchandise, and it is conclusive upon us on the appeal, whatever may be the true construction of the act, and it is decisive of the question whether the sales were made out of the usual course of business.

Undoubtedly the statute is sufficient in its scope to include a series of sales to various purchasers whereby the greater portion of a merchant's stock may be disposed of. The appellant points to certain features of the evidence which tend to indicate that the intent of the bankrupt in disposing of his goods was fraudulent, and we may concede such to have been the fact. Reference is also made to sus-

picious circumstances as evidence that the appellee participated in the fraud. But as to that the court below held otherwise. It is true that the appellee was in the "barber business," but he also had a supply store and he was engaged in buying and selling goods; and it is true that he and the bankrupt were friends, and had had various business transactions covering a period of several years prior to the bankruptcy, and that on one occasion the appellee purchased from the bankrupt a lot of shoes for $225, which was the invoice price, less freight, and that the sale was made on a rising market. But these and the other circumstances referred to are not sufficient to show fraudulent intent on the part of the appellee, and there was no evidence that he had knowledge of the other sales in job lots made by the bankrupt, and there was nothing in the evidence to indicate that he knew of any fraudulent scheme of the bankrupt to dispose of any portion of his stock in violation of the statute.

The decree is confirmed.