Keller v. Fowler Bros. & Cox.

E. R. KELLER v. FOWLER BROS. & COX.*

(*Knoxville.* September Term, 1923.)

1. BANKRUPTCY. Trustee may maintain bill to set aside conveyance by bankrupt.

A trustee in bankruptcy can maintain a bill to set aside for the benefit of bankrupt's creditors a conveyance made by the bankrupt in disregard of the Bulk Sales Law. (*Post*, p. 570.)

Cases cited and approved: Stellwagen v. Clum, 245 U. S., 605; Adcock v. New Crystal Ice Co., 144 Tenn., 511.

Code cited and construed: Sec. 3118a65 (T.-S.).

2. BANKRUPTCY. Bill to set aside conveyance need not set out names and amounts due creditors.

A bill by a trustee in bankruptcy to set aside for creditors a conveyance made by bankrupt in disregard of the Bulk Sales Law need not set out the names and amounts due each of the creditors. (*Post*, pp. 570, 571.)

3. FRAUDULENT CONVEYANCES. Transfer held violation of Bulk Sales Law. Where corporation operated a system of chain stores and had a sort of wholesale house which served as a depot where a large stock was assembled, from which the orders of the retail stores were supplied, a sale of all of the stock in the wholesale house or depot fell within the prohibition of the Bulk Sales Law (Thomp, Shan. Code, section 3118a65.) (*Post*, pp. 571, 572.)

4. FRAUDULENT CONVEYANCES. Sale need not be unprecedented to be out of "ordinary course of trade" under Bulk Sales Law.

*On right of purchaser in violation of Bulk Sales Law, where price has been applied to payment of creditors of seller, see note in 51 L. R. A. (N. S.), 343.

The fact that a corporation operating a system of chain stores would sell any particular store when it proved unprofitable, and had been doing so, did not prevent a sale of a particular store from being one out of the "ordinary course of trade" within the meaning of the Bulk Sales Law (Thomp.-Shan. Code, section 3118a65.) (*Post*, p. 572.)

Cases cited and approved: Daly v. Drug Co., 127 Tenn., 412; Howell v. Howell, 142 Tenn., 31.

5. **FRAUDULENT CONVEYANCES.** Creditors not required to look to specific property transferred but may recover value.

A trustee in bankruptcy, suing to set aside for the benefit of creditors a conveyance under the Bulk Sales Law, was not required to look to the specific property transferred, but could recover its value where the fraudulent vendee commingled the goods with other goods and sold part of them. (*Post*, pp. 573-576.)

Cases cited and approved: Daly v. Drug Co., 127 Tenn., 412; Dillard & Coffin v. Smith, 105 Tenn., 372; Bank v. Haller, 101 Tenn., 83.

6. **FRAUDULENT CONVEYANCES.** Amount creditors entitled to receive.

A trustee in bankruptcy, suing to set aside for the benefit of the bankrupt's creditors a conveyance made in disregard of the Bulk Sales Law, is entitled to recover from the vendee a sum equivalent to the security of which the creditors were deprived by the transfer to the stock of goods, that is, the real value of the stock and the price agreed to be paid by the vendee cannot be used as a measure of the creditor's recovery. (*Post*, pp. 576-578.)

Case cited and approved: Loos v. Wilkinson, 113 N. Y., 485.

Case cited and distinguished: Hamilton Nat. Bank v. Halstead, 134 N. Y., 520.

7. **FRAUDULENT CONVEYANCES.** Buyer entitled to subrogation to claims of creditors.

Where the money of the purchaser, although the transfer is in

Keller v. Fowler Bros. & Cox.

violation of the Bulk Sales Law, goes to the payment of existing creditors of the seller, he is entitled to be subrogated to the claims of the creditors paid with his money, and recovery against him in action by trustee in bankruptcy of seller must be reduced by an allowance of the *pro rata* share of the assets of the bankrupt which the creditors paid would have received had they not been so paid. (*Post, pp.* 578, 579.)

Cases cited and approved: Fecheimer-Keefer Co. v. Burton, 128 Tenn., 682; Elledge v. Anderson, 133 Tenn., 478.

8. **BANKRUPTCY. Trustee held not entitled to recover payment as preference.**

Where stock of goods was sold in violation of Tennessee Bulk Sales Law, part of the purchase price to be paid in cash and part by credit on indebtedness to purchaser, and purchaser gave one check for cash payment and another check for the amount owing to the seller, whereupon the seller gave the purchaser a check for such latter amount, the exchange of checks being obviously only a device of the bookkeepers by way of carrying out the contract to credit the seller with the amount of his indebtedness, trustee in bankruptcy of seller cannot claim that the giving of the check to the fraudulent vendee was an unlawful preference under the Bankruptcy Act (U. S. Comp. St., sections 9585-9656.) (*Post, p.* 579, 580.)

---

FROM KNOX.

---

Appeal from the Chancery Court of Knox County.— HON. CHAS. HAYS BROWN, Chancellor.

J. ALVIN JOHNSON and DONALDSON & MONTGOMERY for Keller.

CATES, SMITH, TATE & LONG, for Fowler Bros. & Cox.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by the trustee in bankruptcy of Rogers & Co. to recover, primarily, the value of a stock of goods alleged to have been transferred to the defendant by Rogers & Co., in violation of our bulk sales statute (Thompson's Shannon's Code, section 3118a65 et seq.). Defendant answered, denying any violation of the statute, considerable proof was taken, and the chancellor decreed generally in favor of the complainant. Some other questions were raised, which will be noted, together with the facts, in the course of the opinion. Some of these questions were decided against the complainant, and both parties have appealed to this court.

Disposing of certain preliminary matters, we think there is no doubt but that the trustee in bankruptcy can maintain a bill to set aside, for the benefit of the bankrupt's creditors, a conveyance made by the bankrupt in disregard of such a statute as the Tennessee Bulk Sales Law. It seems to us all controversy about this is set at rest by *Stellwagen* v. *Clum*, 245 U. S., 605, 38 Sup. Ct., 215, 62 L. Ed., 507. See, also, *Adcock* v. *New Crystal Ice Co.*, 144 Tenn., 511, 234 S. W., 336.

It is said, however, that this suit is not properly brought; that it appears to have been brought for the benefit of the stockholders and creditors of Rogers & Co., and that the stockholders are not entitled to avoid a sale made contrary to the Bulk Sales Law, and only creditors existing at the time of the sale have any such right. This is no doubt true; but the bill distinctly avers that it is brought for the benefit of those who were creditors at the time of

the sale, that such creditors existed, and their demands are alleged to have exceeded $100,000. As far as the bill undertakes to proceed in behalf of such creditors, it is good and should be sustained. The reference to the supposed rights of stockholders and subsequent creditors may be disregarded, and any recovery had herein limited to the benefit of those who were creditors at the time of the sale. We do not think it was necessary for the bill to set out the names and amounts due each of these creditors. They are very numerous, and the proof covers these details fully.

Rogers & Co. was a corporation engaged in the grocery business. It operated a system of chain stores in Knoxville and surrounding towns. Among other properties, it had at No. 103 Jackson avenue, Knoxville, a sort of wholesale house, which served as a depot, where a large stock was assembled, from which the wants of the retail stores were supplied.

Fowler Bros. & Cox is a wholesale grocery enterprise in Knoxville, and Rogers & Company was a customer of the former concern. On January 16, 1922, Fowler Bros. & Cox undertook to buy, and Rogers & Co. undertook to sell, the stock of goods, with a few things excepted, owned by Rogers & Co., and gathered at this depot or wholesale house. The contract of sale will be more particularly referred to hereafter. The price was agreed upon, and the stock moved from the place of Rogers & Co. to the house of Fowler Bros. & Cox, and the consideration was paid. There was no effort to comply with the provisions of the Bulk Sales Law. In February following this sale in January, a general creditors' bill was filed against Rogers & Co., and a short time thereafter proceedings in bankruptcy

instituted against that corporation, and a trustee in bankruptcy appointed 'for it, who brings this suit as aforesaid.

We are satisfied the transaction just described falls within the prohibition of the Bulk Sales Law. That statute declares that—"A sale of any portion of a state of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent and void as against the creditors of the seller, unless," etc. Thompson's Shannon's Code, section 3118a65.

This was a sale "otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business." It is argued that it was the custom of Rogers & Co. when a particular store that it was operating proved unprofitable to sell it out. It is said that when the operation of the wholesale store proved to be unprofitable it was sold out just as other stores had been before, and that there was nothing out of the ordinary in this incident. A sale does not have to be unprecedented to be out of the ordinary course of trade. An individual operating an individual store might sell out. He might buy another store and sell it out, and repeat the process several times, but each of these sales would be governed by the Bulk Sales Law. The business of Rogers & Co. was that of retailing groceries, not selling grocery stores. A sale by it of a grocery store was out of the ordinary course of trade, and it is immaterial that it may have made several such sales.

We think the transaction here in controversy was clearly in violation of the Bulk Sales Law, as that law has been construed in *Daly* v. *Drug Co.*, 127 Tenn., 412, 155 S. W.,

167, Ann. Cas., 1914B, 1101, and *Howell* v. *Howell*, 142 Tenn., 31, 215 S. W., 278.

A considerable portion of the stock purchased by the defendant had been disposed of at the time this suit was brought. The remainder of stock had been commingled with its other goods by the defendant. Even though such portion of this stock as is on hand might be identified, still, under the circumstances stated, upon our authorities, the complainant is entitled to recover the value of the whole stock. He is not required to look to the specific property transferred, but may recover its value. *Daly* v. *Drug Co.*, 127 Tenn., 412, 155 S. W., 167, Ann. Cas., 1914B, 1101; *Dillard & Coffin* v. *Smith*, 105 Tenn., 372, 59 S. W., 1010; *Bank* v. *Haller*, 101 Tenn., 83, 52 S. W., 807.

The most difficult question arising upon the record is as to the amount of the complainant's recovery. A consideration of this question necessitates reference to the contract witnessing the sale. Material portions of this contract are as follows:

"That for and in consideration of the sum of one dollar ($1) cash in hand paid by each party to the other, the receipt of which is hereby acknowledged, and in further consideration of the mutual covenants, agreements and contracts hereinafter made, the said first party has agreed to sell, transfer and convey, and does hereby sell, transfer and convey to the said second party, that certain stock of merchandise containing the kind and character of merchandise usually bought and sold by wholesale grocery merchants, located in the warehouse occupied by party of the first part at 103 West Jackson avenue in the city of Knoxville, Tenn., excepting therefrom, however, all broken case lots of merchandise, all flour and

all feed for live stock, poultry, etc. The party of the second part agrees to pay for said stock of merchandise so sold to it, upon the terms and in the manner hereinafter stipulated, a sum equal to the market value of the different articles of merchandise therein contained on this the 16th day of January, 1922, that is to say, that the market value of the several different articles so to be paid shall be the price at which the same articles of merchandise are being offered in approximately the same quantities delivered in Knoxville, Tenn., on the 16th day of January, 1922."

Then follow certain provisions for taking an inventory and fixing the market value of the various articles of merchandise:

"As a part consideration of said stock of merchandise by the party of the second part at the market value, it being understood between the parties that a considerable portion of said merchandise will necessarily have to be carried by the party of the second part for some time on account of there being little or no demand for the same, and on account of other market conditions, the said party of the first part hereby agrees and binds itself, its successors and assigns, to purchase from party of the second part upon the terms and at a price which will guarantee to the party of the second part the profit hereinafter stipulated on said purchased goods, wares and merchandise offered by the party of the second part as wholesale grocers for sale to the trade, to an amount of approximately $20,-000 per month, beginning on the 16th day of January, 1922, until the said party of the first part, its successors or assigns, shall have bought and accepted from the party of the second part such goods, wares and merchan-

dise, to the amount of two hundred and forty thousand dollars ($240,000). . . ."

It was agreed that the purchase of this $240,000 of goods should be at such a price as would give to the defendant a profit of nine per cent., and it was elsewhere provided in the contract that Rogers & Co. should execute a bond to secure the performance of this undertaking.

"It is further stipulated and agreed that, promptly after the completion of the inventory and the ascertainment of the market value of the stock of merchandise at 103 West Jackson avenue, sold and purchased hereunder, the party of the second part shall make settlement and payment for the merchandise so purchased hereunder by paying to the party of the first part the sum of ten thousand dollars ($10,000) in cash and by giving credit on the account of the party of the first part upon the books of the party of the second part for the full amount of merchandise purchased by the party of the first part prior to the 16th day of January, 1922, and remaining unpaid for on said date of January 16, 1922. The difference between the total amount of the market value of said stock of merchandise at 103 West Jackson avenue, purchased by the party of the second part as of January 16, 1922, and the total amount of cash paid by second party and the amount credited by second party on account of the party of the first part, as above stated, shall be placed to the credit of the party of the first part on the books of second party, to be paid only in merchandise purchased of second party by party of the first part and charged for upon the basis of profit hereinbefore stipulated."

Acting under this contract, the parties took an inven-

tory and agreed on the value of the stock sold as being $20,395.73, and the chancellor gave the complainant a decree for this sum. This is assigned as error by the defendant. Defendant offered much proof tending to show that the market value of the stock was much less than the sum stated, but all this proof was excluded by the chancellor over the exceptions of defendant.

We think the contention of the defendant must be sustained. The contract provides:

"That the market value of the several different articles so to be paid shall be the price at which the same articles of merchandise are being offered in approximately the same quantities delivered in Knoxville, Tenn., on the 16th day of January, 1922."

That is to say, the contract defines the market value of this old stock as its cost value, which we know is seldom the case. The contract itself shows that a part—and a great part—of the consideration inducing defendant to make this purchase was the obligation undertaken by the bankrupt to buy from defendant $240,000 worth of goods at a price giving the defendant a profit of nine per cent. That part of the consideration has wholly failed, and it would be highly inequitable to leave this out of contemplation in adjusting the rights of the parties.

The trustee, representing the bankrupt's creditors, is only entitled to recover from the defendant a sum equivalent to the security of which these creditors were deprived by the transfer of the stock of goods; that it to say, the real value of the stock. The price agreed to be paid by a fraudulent vendee cannot be used as a measure of the creditors' recovery. If the price had been inadequate the

court would have ignored it, and would have charged the fraudulent vendee with full value of the goods received. So when the price agreed upon is excessive, and influenced by other considerations, we think likewise, in equity, the recovery of the creditors should be limited to the real value of the goods.

Ths question is discussed by the New York court of appeals in *Hamilton National Bank* v. *Halsted,* 134 N. Y., 520, 31 N. E., 900, 30 Am. St. Rep., 693, and in that case Judge Parker observed:

"If a fraudulent transferee sell the property before the commencement of the action to set aside the transfer, a judgment for the value of the interests transferred to him may be recovered, but, however scandalous the fraud may be, the court is powerless to award judgment against him for a sum exceeding such value."

This language was used in a case involving actual fraud, and the rule stated should have greater force in a case where the fraud is only constructive, and we think that this is such a case, as will hereafter appear.

To permit a recovery of any fictitious value given this stock of goods at the time of the inventory would, in the language of another learned judge, "be spoliation, not justice or equity." *Loos* v. *Wilkinson,* 113 N. Y., 485, 21 N. E., 392, 4 L. R. A., 353, 10 Am. St. Rep., 495.

We think, therefore, the chancellor erred in excluding evidence as to the market value of this stock of goods at the time of the transfer. This proof was competent, and the case must go back for proof on this matter and a determination of such market value.

The inventory of the goods has been preserved, and it

should not be a matter of great difficulty for the complainant to protect the rights of the creditors in taking proof as to market value.

As heretofore said, after a careful review of the evidence, which we have orally .discussed, we do not find that the transfer of this stock of goods was fraudulent in fact. It was in violation of the Bulk Sales Law, and therefore constructively fraudulent, but the proof does not establish actual fraud. This becomes important in disposing of the remaining questions presented on this appeal.

In *Daly* v. *Drug Co.*, supra, the court refused to take a distinction between actual fraud and fraud in law in applying the rule that the creditors may have a personal recovery against a fraudulent vendee, as well as a recovery of the specific property conveyed. This case went no further than that, however, and it was not intended to repudiate other well-settled distinctions between the rights of a vendee under a sale fraudulent in fact and those of a vendee under a sale fraudulent only in law.

It is shown by the testimony of McMillan, who had charge of the accounts of Rogers & Co., that $7,270.79 of the purchase price paid by the defendant to the bankrupt for the stock of goods went to existing creditors of the bankrupt, and it is contended by the defendant that it is entitled to credit on any judgment obtained against it for this sum. The chancellor overruled this contention, but we think he was in error.

Where the money of the purchaser, although the transfer is in violation of the Bulk Sales Law, goes to the payment of existing creditors of the seller, the buyer is entitled to be subrogated to the claims of the creditors paid

with his money. The recovery against defendant herein must, therefore, be reduced by an allowance to it of the *pro rata* share of the assets of the bankrupt, which the creditors paid with defendant's money would have received had they not been so paid. This proposition is settled by *Fecheimer-Keifer Co.* v. *Burton,* 128 Tenn., 682, 164 S. W., 1179, 51 L. R. A. (N. S.), 343. This case was later approved and followed in *Elledge* v. *Anderson,* 133 Tenn., 478, 182 S. W., 234.

We find no merit in other claims made by the defendant for subrogation or allowances, and the chancellor properly overruled them.

As appears from the contract between the parties above quoted, the defendant agreed to pay to the bankrupt for the stock purchased $10,000 in cash, and to give credit to the bankrupt for the amount owing by the bankrupt to defendant, and it was agreed that any balance found due after the inventory was taken would be adjusted in trade.

As a matter of fact, the $10,000 in cash was paid by check of the defendant, and defendant also gave a check to the bankrupt for the small balance found due upon the inventory. The amount owing by the bankrupt to defendant was $9,789.85, and defendant seems to have given its check to the bankrupt for this sum, and the bankrupt thereupon gave its check to defendant for a like sum.

Upon the state of facts it is argued for the complainant that he is entitled to recover such payment of $9,789.85 from the defendant as an unlawful preference under the Bankruptcy Act (U. S. Comp. St., sections 9585-9656), made within four months of bankruptcy.

This argument is not well founded. The chancellor

found, and we agree with him, that the proof does not show an unlawful preference or a design to accomplish such a result. The real transaction between the parties was a transfer of goods by the bankrupt to the defendant for which the defendant paid partly in cash and partly by credit on the bankrupt's account. The bankrupt did not in truth pay any money to the defendant nor deplete its assets other than by the transfer of this stock of goods. The $9,789.85 which the bankrupt apparently paid to defendant was merely defendant's money paid back. This exchange of checks was obviously only a device of the bookkeepers by way of carrying out the contract to credit the bankrupt with the amount of its indebtedness due defendant.

The trustee in bankruptcy recovers under the Bulk Sales Law the stock of goods or rather the value thereof. He can recover the stock or its value but once. Having had a recovery under the State law of nearly all that the Bankruptcy Act would entitle him to obtain, there is small room in this case for the application of this section of the Bankruptcy Act had there been a preference.

The assignments of error made in behalf of the trustee in bankruptcy are therefore overruled.

The costs of appeal will be divided between the parties. Costs below will be taxed by the chancellor. Reversed and remanded. Injunction dissolved.