### COHEN *v.* CALHOUN.

(En Banc. Oct. 16, 1933.)

[150 So. 198. No. 30689.]

**Broom, Bilbo & Shipman,** of Jackson, for appellant.

36

Robertson & Campbell, of Jackson, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellee brought this action against the appellant in the county court of Hinds county to recover the sum of three hundred dollars. There was a trial resulting in a judgment in favor of appellee. From that judgment appellant appealed to the circuit court of Hinds county, where the judgment was affirmed, and from that judgment appellant prosecutes this appeal.

There is involved a construction of the bulk sales statute, section 3353, Code of 1930.

B. J. Miller was a retail merchant in the city of Jackson. He was duly adjudged a bankrupt, and appellee was appointed trustee to administer the estate under the federal bankruptcy laws. Prior to the adjudication of bankruptcy Miller sold to appellant one hundred and fifty ladies' dresses in bulk, for which appellant paid him the sum of three hundred dollars. At the time of the sale Miller was insolvent. Both the seller and appellant failed to comply with paragraphs (a), (b), and (c) or the bulk sales statute. That statute in this language:

"A sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business, and a sale of an entire stock of merchandise in gross, shall be presumed to be fraudulent and void as against the creditors of the seller, unless, at least five days before the sale:

"(a) The seller shall have made a full and detailed

inventory, showing the quantity, and, so far as can be done by the exercise of reasonable diligence, the cost price to him of each article sold; and

"(b) The purchaser shall have in good faith made full and explicit demand of the seller for the name, place of residence and business and post-office address of each of his creditors, and the sum due each, and to which demand the seller shall have made full and truthful written answers; and

"(c) The purchaser shall have in good faith notified personally or by mail each of the seller's creditors, of whom he has knowledge, or with the exercise of reasonable dilligence could have acquired knowledge, of the proposed sale and of the cost price of the merchandise proposed to be sold and of the price to be paid therefor by the proposed purchaser."

To appellee's declaration, appellant pleaded the general issue and a special plea, which set up, in substance, that such sales in bulk were customary among the retail merchants of the city of Jackson. The evidence for appellant tended to establish the pleas.

Miller, the bankrupt, testified, in substance, as follows: That he was discontinuing his business at his old store in the city of Jackson and moving to a new store. That in the new store he intended to handle a better class of goods than he had handled in the old store. That the goods in the old store had become somewhat shopworn. That he sold appellant one hundred and fifty dresses at two dollars each, which were sold and delivered in bulk and paid for by appellant in one check. That in addition he sold goods from the store in bulk to L. Abrams and to Mrs. Sophia Lasunsky. That he was at the time, and had been for some time theretofore, a retail merchant. That he sold at retail alone, and that these bulk sales were out of his usual course of business, and were made for the purpose of going out of his old place of business into a new store where he expected to carry a better stock.

It will be observed that the first paragraph of the bulk sales statute provides, among other things, that a sale of any part of a stock of merchandise "otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business," shall be fraudulent and void, unless paragraphs (a), (b), and (c) of the statute are complied with.

The case was tried by agreement of the parites before the county judge without a jury. In rendering judgment for appellee the court necessarily found that the sale by Miller to appellant was a sale otherwise than in the ordinary course of trade or the regular and usual prosecution of Miller's business as a retail merchant, and the circuit court in affirming the judgment of the county court necessarily so found. We think the judgment is justified by both reason and authority. Freeman v. Collier Racket Co., 100 Tex. 475, 101 S. W. 202; Keller v. Fowler Bros. & Cox, 148 Tenn. 571, 256 S. W. 879; Nisbet v. Quinn (C. C. Ga.), 7 Fed. 760; Goodman v. Clarkson, 39 Ga. App. 383, 147 S. E. 183; Rison v. Knapp, 20 Fed. Cas. 835, No. 11,861.

If appellant is right in his contention, it means that any insolvent retail merchant could sell out his stock in bulk without complying with the last three paragraphs of the statute, provided he sold to more than one purchaser. In other words, he could divide his stock up into two portions and sell one lot to one purchaser and one to another; or he could divide it into as many lots as he saw fit and sell to as many different purchasers, and thereby defeat the plain policy of the statute.

The statute cannot be destroyed by custom and usage. D. S. Pate Lumber Co. v. Weathers (Miss.), 146 So. 433. Suppose it was the custom and usage of merchants in a particular locality to sell their entire stock in bulk at one time to one purchaser without complying with the statute; certainly no one would contend that such a custom would obviate the necessity of complying with the

statute. Whenever the statute is violated custom and usage must stand aside.

Affirmed.

**Ethridge, J.**, delivered a dissenting opinion.

I cannot agree with the construction placed upon section 3353, Code of 1930, by the majority opinion. The provision of the statute, "A sale of any portion of a stock of merchandise, otherwise than in the ordinary course of trade, or in the regular and usual prosecution of the seller's business," etc., should receive a reasonable construction. The construction placed upon it by the majority opinion is, in my judgment, too narrow; is unreasonable, and tends to make the statute an instrument of injustice rather than one of justice.

In the court below, the proof did not show the amount of the stock of goods carried by Miller in his store in the usual prosecution of his business. I think this should have been done. The testimony for the appellant showed that it was customary and not unusual for merchants to sell goods in the manner in which the appellant bought these in the case at bar, in the ordinary course of trade. The ordinary course of trade, of course, means the ordinary course of trade in the particular line of business in the locality where the transaction occurs, or such as is generally or usually done in pursuit of such business. In this case it was the business of a retail store.

One hundred and fifty dresses out of a stock of goods, in a city of approximately fifty thousand inhabitants, would certainly not be a transaction that would tend to defraud creditors of the institution. The proof shows that these one hundred and fifty dresses were shopworn and unsalable, and this method of selling them was customary in the locality where the sale took place.

I think the cases cited in the majority opinion are unsound, unduly restrictive, and should not be followed. In 27 C. J., p. 882, section 890, it is said that: "Bulk

sale laws do not apply to every description of sale or transfer, but only to such as are embraced in the statutory description of sales or transactions intended to be affected. Subject to the language of the particular applicatory statute, the transaction must be a sale, transfer or assignment, in bulk, of the whole, or of a part, of property otherwise within, and by one subject to, the operation of the statute, otherwise than in the ordinary course of trade, and contrary to the regular prosecution of the business."

In Sabin v. Horenstein (C. C. A.), 260 Fed. 754, it was held that sales in job lots were not sales in bulk.

In Carpenter v. Karnow (D. C.) 193 Fed. 762, it was held that three separate sales of goods, aggregating less than the entire stock, did not constitute a bulk sale.

In Fiske Rubber Co. v. Hayes, 131 Ark. 248, 199 S. W. 96, it was held that a material portion of the stock must be sold to come within the operation of the statute.

In Fawver v. Flesher, 208 Ill. App. 21, it was held that the major part must be transferred to fall within the statute.

In Mahoney-Jones Co. v. Sams Bros., 128 Tenn. 207, 159 S. W. 1094, it was held that a sale of half a stock of goods constitutes a violation of the Bulk Sales Law.

In Armfield Co. v. Saleeby, 178 N. C. 298, 100 S. E. 611, it was held that a sale of ten per cent of a stock of goods is not a Bulk Sale Law within the statute.

Of course, the statutes in their terms vary somewhat; but it is manifest, to my mind, that what the statute in the case at bar meant is to forbid a large part of a stock of goods being sold in bulk. It did not intend to prohibit one retail merchant selling to another a small portion of a stock of goods, which might result in mutual benefit to all concerned, and which is not unusual in the course of retail trade. It frequently happens that one merchant will overestimate the demands of his trade, while another will underestimate the demands of his trade; and if one should sell to another a small part of stock to meet the

exigencies of the trade of either or both, that would not violate the Bulk Sales Law, unless the amount sold constituted such a proportion of the entire stock as to take it out of the ordinary disposition of goods.

I think the facts should have been developed in the court below, and that if they had been developed, it would have been shown that the portion sold in the present transaction was so small, compared with the total, that it would not violate the Bulk Sales Law.